# NATHAN R. TRACY v. WALTER BITTLE, Appellant.

**Division One, July 3, 1908.**

1. **GRAVEYARD: Common Law Dedication.** In 1860 the owner of land staked off a half acre for a graveyard, the spot selected adjoining a public road, and being at that time inclosed with the fence which inclosed the farm of which it formed a part, and a gateway was made through that fence for the public to enter. In a year or two thereafter the other three sides were fenced, so that the spot was entirely cut off from the rest of the farm. The owner's grandchild was buried there in 1860, and the owner himself in 1868, and prior to 1879 ten other members of his family, and their bodies still remain there. The public had the privilege of burying there and did bury there until eighteen or twenty graves appeared prior to 1879, when a new cemetery was laid out in the neighborhood and several of the bodies were removed to it. In 1889, when defendant's father bought the farm, with no reservation in the deed, the fences still existed around the graveyard, and remains of the old fence still existed at the time of the trial, notwithstanding defendant had pastured his stock over the ground and cleared the brush therefrom. Every owner of the land up to the time defendant's father bought in 1889 recognized that the graveyard was a public burying ground. *Held*, to establish a common law dedication to the public of the half acre as a public burying ground, and to have been accepted and used as such.

2. ————: ————: **Public Use.** The use of grounds for burial purposes is a public use, and there may be a common law dedication of such grounds to such use. Nor to constitute a dedication of land for a graveyard is it necessary that any conveyance be made, or that there be any person capable of taking a conveyance otherwise than in trust. Proof of such dedication may consist of acts going to show that the owners intended to donate the use for a public purpose and that the public had accepted and used it for that purpose.

3. ————: ————: ————: **Notice.** A reservation in one of the deeds in defendant's chain of title of the small tract "as a public burying ground," already established on the farm, was such a notice as would at least put defendant on his inquiry.

4. ————: ————: **Limitations.** Ten years' adverse possession and use of a tract of ground dedicated to a public or charitable use for burying the dead, will not give. the owner of the fee the

right to interfere with such use. The Statute of Limitations does not apply to such a tract, and is no defense to an injunction to enjoin the owner of the fee from desecrating the graveyard and the graves therein.

5. ——: ——: **Desecration: Injunction: Parties.** Injunction is a proper remedy to enjoin and restrain the owner of the fee from desecrating a graveyard dedicated to public use, and a plaintiff who has near relatives buried therein has a peculiar right to maintain the suit.

6. ——: ——: **Abandonment.** A graveyard is none the less such because for a quarter of a century no one has been buried there. Until nothing shall remain to distinguish it from the common earth around and it becomes wholly unknown as a graveyard, can it be said to be abandoned as a graveyard.

7. ——: ——: **Fee: Easement.** The right of the public in the tract of ground dedicated to public use for a graveyard is somewhat in the nature of an easement, and the fee is in the owner of the farm of which it was a part at the time the dedication was made, and when it is abandoned as such the use and right to possession return to him. But so long as it is kept in condition to be known and is known as a burying ground, the owner of the fee has no right to the possession. The public has the beneficial use thereof, and he holds the fee in trust subject to that use. Hence, a decree that says he "has no right thereto" is too broad; he has a reversionary interest.

Appeal from Grundy Circuit Court.—*Hon. Geo. W. Wanamaker*, Judge.

MODIFIED AND AFFIRMED.

*Hall & Hall* for appellant.

(1) Injunction will not lie to prevent defendant from continuing in possession nor to restrain him from preventing plaintiff from fencing or exercising any other control over the land. Smith v. Jameson, 91 Mo. 13; Echelkamp v. Schrader, 45 Mo. 505; Weigel v. Walsh, 45 Mo. 560; Crenshaw v. Cook, 65 Mo. App. 264; Graham v. Womach, 82 Mo. App. 624; Powell v. Canaday, 95 Mo. App. 513; Jerome v. Ross, 7 Johns. Ch. 315; Carney v. Hadley, 32 Fla. 344; McGregor v. Min. Co., 14 Utah 47; Lacassagne v. Chapuis, 144 U. S. 119.

(2)  If this is a public graveyard, as alleged, then the plaintiff cannot maintain this action; the title is in the public, and not in plaintiff.  Smith v. Gardiner, 12 Ore. 221; Gause v. Perkins, 3 Jones Eq. 178; Bolster v. Catterlin, 10 Ind. 118; Jerome v. Ross, 7 Johns. Ch. 334; Cooper v. Hamilton, 8 Blackf. 378; Millan v. Ferrell, 7 W. Va. 229; Smith v. Pettingill, 15 Vt. 84.  (3)  Although James B. Tracy may have staked off the land in controversy for a graveyard and permitted the public to use it as such, this at most gives but a license or privilege to be used only so long as the place continued to be used as a burial ground.  5 Am. and Eng. Ency. Law (2 Ed.), 789; Page v. Symonds, 63 N. H. 17, 56 Am. Rep. 481; Craig v. First Presbyterian Church of Pittsburgh, 88 Pa. St. 42; Windt v. German Reformed Church, 4 Sandf. Ch. 471.  A grant of a lot in a cemetery is said to be analogous to a grant of a pew in a meeting house and the right of burial in a public burying ground in some respects resembles the right of pew tenancy.  Jones v. Towne, 58 N. H. 462; Sohier v. Trinity Church, 109 Mass. 21; Kincaid's Appeal, 66 Pa. St. 411.  (4)  If plaintiff had any remedy at all for the acts complained of, it was not by injunction, but trespass on the case.  Kincaid's Appeal, 66 Pa. St. 411, 5 Am. Rep. 380; Craig v. First Presbyterian Church of Pittsburg, 88 Penn. St. 42, 32 Am. Rep. 423; Smith v. Thompson, 55 Md. 5, 39 Am. Rep. 409; Meagher v. Driscoll, 99 Mass. 28, 96 Am. Dec. 759; Bassemer, Land and Imp. Co. v. Jenkins, 111 Ala. 135, 56 Am. St. Rep. 26.  (5)  Although James B. Tracy may have measured off and dedicated the land in controversy as a public graveyard, it was without a deed; the dedication only created a license to bury in the public, which was restricted to be the right of burial, the fee remained in the owner and passed to defendant by the several conveyances.  Rutherford v. Taylor, 38 Mo. 315; Campbell v. Kansas City, 102 Mo. 326; Kansas City v.

Scarritt, 159 Mo. 471. (6) Even though plaintiff ordinarily might have had some right in an action in trespass for the disturbance of the graves of his deceased relatives, such right was by reason of his kinship and inheritance alone. Jackson v. Congregation of Children of Israel, 108 Ga. 518; Day v. Beddingfield, Noy 104; Spooner v. Brewster, 3 Bing. 136; Sabin v. Harkness, 4 N. H. 415; Matter of Brick Presbyterian Church, 6 Edw. Ch. 155; Mitchell v. Thorne, 134 N. Y. 536; Pierce v. Proprietors, etc., 10 R. I. 227. (7) Whatever right or interest plaintiff or public may have in the premises claimed had been barred by the Statute of Limitation long before commencement of this suit. R. S. 1899, secs. 924, 4262, 4266; Harbison v. School District, 89 Mo. 184; Ozark Plateau Land Co. v. Hays, 105 Mo. 151; Heinemann v. Bennett, 144 Mo. 113; Benne v. Miller, 149 Mo. 236; Stevens v. Martin, 168 Mo. 410; Kansas City v. Scarritt, 169 Mo. 483; Brewing Co. v. Payne, 197 Mo. 429.

*S. S. Kelso, Harber & Knight* and *O. N. Gibson* for respondent.

(1) The statutory method of dedicating lands to public uses has never been held to be exclusive; common law dedication is valid and effectual for every purpose, since the statute, as before. Campbell v. Kansas City, 102 Mo. 326; Baker v. Vanderburg, 99 Mo. 378; Rose v. St. Charles, 49 Mo. 509; McKee v. St. Louis, 17 Mo. 184; Cramer v. Allen, 3 Mo. App. 545. (2) When an unequivocal offer by the owner and acceptance by the public appear, the title passes, and no writing or other formalities are necessary, nor is any definite period of user by the public required. Railroad v. Railroad, 190 Mo. 254; McGrath v. Nevada, 188 Mo. 107; Pierce v. Chamberlin, 82 Mo. 618; Stacy v. Miller, 14 Mo. 478; Board of Regents v. Painter, 102 Mo. 464;

Heitz v. St. Louis, 110 Mo. 618; Bauman v. Boreckeler, 119 Mo. 189. (3) It is only when the public claims premises by adverse possession, alone, without assent by the owner, that adverse user must be shown to have continued for the statutory period. Field v. Mark, 125 Mo. 502; Rosenberger v. Miller, 61 Mo. App. 422; Railroad v. Railroad, 190 Mo. 254; McGrath v. Nevada, 188 Mo. 107. (4) "A cemetery is none the less a graveyard because further interment in it becomes impossible. It only loses its character as a resting place of the dead when those already interred are exhumed and removed." Kansas City v. Scarritt, 169 Mo. 485; Goode v. St. Louis, 113 Mo. 257; Campbell v. Kansas City, 102 Mo. 226; State v. Culver, 65 Mo. 607; 6 Cyc. 715. (5) Title by adverse possession cannot be acquired in lands dedicated to public uses. R. S. 1899, sec. 4270; Williams v. St. Louis, 120 Mo. 403; Railroad v. McGee, 75 Mo. 522, affirmed 115 U. S. 469; St. Louis v. Railroad, 114 Mo. 13; Brown v. Carthage, 128 Mo. 10; Railroad v. Smith, 170 Mo. 327; Railroad v. Baker, 183 Mo. 312; Railroad v. Totman, 149 Mo. 657; City of Columbia v. Bright, 179 Mo. 441. (6) And land dedicated to the public for burial purposes is within this statute. Contitution, sec. 6, art. 10; Campbell v. Kansas City, 102 Mo. 345; State ex rel. v. Wesleyan Cemetery, 11 Mo. App. 570. (7) Injunction is the proper and only adequate remedy for one who is injured in his individual rights by the obstruction of a public use. Longworth v. Sedevic, 165 Mo. 221; Cummings v. Trans. Co., 156 Mo. 28; Monroe v. Crawford, 163 Mo. 178; Corby v. Railroad, 150 Mo. 457; Sherlock v. Railroad, 142 Mo. 172; Downing v. Dinwiddie, 132 Mo. 92; Palmer v. Crisle, 92 Mo. App. 510; Shepherd v. May, 83 Mo. App. 272; Dubach v. Railroad, 89 Mo. 483; Lockwood v. Railroad, 122 Mo. 86; Lytle v. James, 98 Mo. App. 387; Downing v. Corcoran, 112 Mo. App. 345.

GRAVES, J.—The petition in this cause, which is one for injunctive relief, is quite long, but the purport of the action is to enjoin and restrain the defendant from the desecration of a public graveyard, and the graves therein. The plaintiff has a number of immediate relatives buried in the graveyard in dispute, and in 1905, went to the premises with material to replace the fences around it, when he was prevented from so doing by the defendant who owns the body of land from which the graveyard was originally carved and taken. For some time the defendant had been pasturing his stock on this graveyard, along with the other land owned by him. The evidence tends strongly to show the following facts: That in 1860 one James B. Tracy, the father of the present plaintiff, was the owner of the north half of section 10, township 62, range 24, Grundy county, Missouri. In the spring of 1860 James B. Tracy and his son staked off about one-half acre of this land for a burying ground or graveyard. The spot selected adjoined a public road. The outside fences of the farm, which had been previously built in 1859, formed the fence on one side, and a gate-way was made for the public to enter. In a year or two thereafter the other three sides were fenced so that it was entirely cut off from the remainder of the farm. The first interment was the child of plaintiff's brother in February, 1860. From that time on some ten members of the James B. Tracy family were buried there, the last being a daughter in 1878 or 1879. These bodies, including that of James B. Tracy, who died in 1868, are yet on this spot of ground. Anybody who desired used this graveyard. Others buried there until some eighteen to twenty graves appeared. One outside of the Tracy family was buried there shortly after the Tracy girl in 1878 or 1879. The evidence shows that the public had the privilege to bury there and did bury there until about this last-mentioned date. About this time a new

cemetery was laid out in the neighborhood known as the Martin graveyard. This one was called the Tracy graveyard. Several of the bodies buried in the Tracy grounds were removed to the Martin grounds. In 1865 Tracy and wife deeded the farm by warranty deed to one Naglespaugh. In 1868 Naglespaugh and wife conveyed the farm by warranty deed to Adam Briegle, but the deed contained these words "except one-half acre reserved for a public burying ground." In 1875 Adam Briegle and wife deeded, without reservation, to their son Valentine Briegle. In 1888 Valentine Briegle reconveyed to Naglespaugh, and in 1889 Naglespaugh conveyed to Henry Bittle, father of the present defendant. In 1896 Bittle conveyed to his two sons, Walter and Alexander, and in 1899 Alexander conveyed his half interest to Walter. No reservations appear in any of the deeds except the one mentioned hereinabove.

Defendant by answer claims title to this half acre of ground not only by this chain of title, but further pleads the ten-year Statute of Limitations. The evidence tends strongly to show that at the time the elder Bittle purchased the land the fences, although out of repair, to a considerable extent, were yet around this ground. That they remained there for some three or four years thereafter. Defendant's evidence tended to show that the graveyard had been in his enclosure, unfenced, and used by him, under claim of title thereto, for more than ten years. It also tended to prove that no work had been done on the graveyard by the Tracys or the public for twelve or more years. Trial was had before the court. Defendant asked a number of declarations of law, some of which were given and some refused, but this being an equity case we shall not burden this opinion with the same.

The trial court, after hearing all the evidence, found that in January, 1860, James B. Tracy, father

of plaintiff, set apart and dedicated to public use the half acre (fully describing it in the judgment and finding) for a public burying ground. The finding and judgment then proceeds in this language: ''That the same had ever since been used for a burying ground and several bodies, including a number of plaintiff's relation, buried therein until about the —— day of April, 1905, at which time plaintiff and others entered upon said land with material and was proceeding to inclose same with a fence, at which time the defendant, who owned the lands of which said tract of land so dedicated had formed a part, forbid and prohibited the plaintiff and said others from fencing the same, claiming the same as his own and denying the right of plaintiff and the public to use the same as a burying ground. It is therefore ordered, adjudged and decreed by the court that said ground is a public burying ground, and that defendant has no right thereto and that he and all persons claiming under or through him be and they are forever enjoined and prohibited from preventing the improvement or use of said land by plaintiff or the public as a burying ground. It is further ordered and adjudged that the plaintiff have and recover of the defendant his costs in this suit expended taxed at —— dollars and that he have therefor execution.''

From this judgment, being unsuccessful in his motion for new trial, the defendant appealed. Points made and the contentions of parties, so far as may be required, will be noted in the course of the opinion.

This sufficiently states the case for the present.

I. To our mind the gist of this action is to restrain a desecration of a graveyard and the graves therein; and incidentally the title to the property is involved. The case may be shortened by determining the interests of the parties in and to this plot of

ground first, and with that end in view we discuss that question first. That old man Tracy staked off this tract of land for public use as a burying ground in 1860, is abundantly shown. That the public, outside of the Tracy family, did so use it from 1860 to 1878 is thoroughly established. That it was fenced off to itself in 1889, when the elder Bittle bought the place, and for several years thereafter, is well established. That the remains of the old fence, marking the line, existed at the date of trial, is shown, notwithstanding the fact that defendant had pastured his stock over the ground, and cleared the brush therefrom. That every owner of the premises up to the time of the Bittles recognized that this ground in dispute was a public burying ground is thoroughly shown. The evidence does not stop by showing that Tracy merely permitted certain members of the public to bury there, but it goes further and to the extent of showing that the ground was and could be used by the public generally, and to this end was fenced to itself, with a gateway from the public highway into the graveyard. There is ample evidence in this record to show a common law dedication of this tract of ground to the public as a public burying ground, and that it was accepted and used by the public. The leading questions then are, can a public graveyard be established by a common law dedication, and if so can adverse title thereto be acquired under the Statute of Limitations, so long as the remains of the dead are there? Incidentally and along with these are the questions as to whether or not this is a proper action and whether or not the evidence shows an abandonment of the ground used as a graveyard. Of these in their order.

II.    That the use of grounds for burial purposes is and may be a public use we take it is unquestioned. In 5 Am. and Eng. Ency. Law (2 Ed.), 784, it is said:

"Cemeteries are recognized in the United States as among the purposes for which lands may be dedicated to the public. And it is held that upon dedication the owner is precluded from exercising his former rights over the land, and the public right of exclusive enjoyment continues until the place loses its identity as a burying ground."

Can there be a common law dedication of lands to such use in this State? We think so. The general rule is stated in 6 Cyc. p. 714, thus: "Land may be dedicated to the public for use as a cemetery. And one who has dedicated land as a public cemetery, the dedication having been accepted, is estopped from denying it. To constitute a dedication of land for a cemetery it is not necessary that any conveyance be made, or that there be any person capable of taking a conveyance otherwise than in trust. A dedication may arise out of the conduct of the owner and the acts of those who rely thereon."

In this State in the case of Campbell v. Kansas City, 102 Mo. 339, MARTIN, Special Judge, uses this language: "It is clear from the testimony in the record that the original proprietors never devoted this land to the use of a graveyard by any instrument of writing, in the form of deed or plat, sufficient to comply with the requirements of the law relating to the transfer of interests in real estate. It, therefore, follows that the legal fee must remain still in the original proprietors or their legal representatives. But the actual use of land may be devoted to public purposes without deed or writing of any character. Proof of such devotion may consist of acts *in pais* going to show that the owners intend to donate the use for a public purpose, and that the public has accepted and used it for that purpose. The estate thus parted with does not extend beyond the use of the land, leaving the

technical legal fee in the donors, which, however, must be held by them for the donated use as long as that use continues. While the plat of 1847 could not operate to pass the fee simple of this land to the public, or to any trustee of the public, it constitutes an important and controlling fact in the evidence to establish a dedication of the use of the land as claimed by the defendant. The donation of the land was marked on the original plat of 1847, which was made by one of the proprietors, and was used by him at the public sale which took place soon thereafter. The public accepted the use thus indicated by burying their dead on the land for about ten years. The plat and the use of the land, as indicated by the plat, were acquiesced in by all the proprietors. These facts constitute the best evidence possible of a dedication *in pais* to the public, which dispenses with the necessity of written instruments, as well as the existence of a grantee or trustee. Such I understand to be the established law of the State on the subject of dedications of land to public use. [Becker v. St. Charles, 37 Mo. 13; Putnam v. Walker, 37 Mo. 600; Rutherford v. Taylor, 38 Mo. 315; Price v. Thompson, 48 Mo. 365; Reid v. Board of Ed., 73 Mo. 304.]''

In the case at bar we do not have the plat, but we do have the proprietor staking off and fencing the ground, and putting in a gate on that side which adjoined a public road. This tends to show that it was open to the public. Had he intended it for a private graveyard, he most likely would have placed the gate within his general enclosure.

A very similar case to the one at bar, although not so strong in facts, is the case of Davidson v. Reed, 111 Ill. l. c. 170, where the court said: ''James McKnight originally owned the southwest quarter of section 21, township 10, range 10, east, in Cumberland county. The burying ground is located near the south-

east corner of the land. As early as 1844 McKnight buried a child on the land in question, and since that time it has been known as the 'McKnight Graveyard,' and has been used by the neighborhood as a burying ground. While McKnight owned the land he buried a wife and two children there. Reed testified that McKnight told him 'he expected the neighbors would want to bury there, as we had commenced it.' He also testified that he and McKnight talked of staking off and fencing the ground, but they neglected to do it. McKnight sold the land to Rhodes, and while Rhodes owned the land the dead were buried there, as before. He sold to Scott, and Scott to Collins, and Collins sold to the defendant. Collins, while he owned the land, buried a child in the graveyard. Indeed, from 1844 the land in question has been known, used and recognized by the different owners and the public as a public burying ground. While Collins owned the land he said if the people in the neighborhood would clear and fence it, he would give them a half acre. Rhodes also, as he testified, offered to give the graveyard if the people would fence it. It was also proven that the defendant offered to give the land occupied by the graves if the people would fence it. The only conclusion to be reached from all the evidence is, that McKnight, when he owned the land, established a graveyard, and intended to dedicate to the public the particular tract in question, to be used as a place for the burial of the dead. It is true that when he sold the land no reservation was made in the deed, but the subsequent purchasers all had notice of the existence of the burying ground, and purchased subject to the rights the public had acquired in and to the property. In the case of Cincinnati v. White's Lessee, 6 Pet. 431, it is said that all that is required is the assent of the owner of the land, and the fact of its being used for the public purposes intended by the appropriation.

The assent of the owner, McKnight, that the land should be appropriated for the burial of the dead, is clear and manifest. That the public accepted and used the land for the public purpose for which it was designated by the owner, is also beyond dispute.''

In the case at bar one of the deeds of record in defendant's chain of title contained a reservation, so that neither he nor his grantor, the father, can well disclaim such a notice as would have at least put them upon inquiry.

Fully as strong and pointed as the foregoing cases are the following: Baker v. Vanderburg, 99 Mo. l. c. 393; Boyce v. Kalbaugh, 47 Md. 334; Hayes v. Houke, 45 Kan. 466; Redwood Cemetery Assn. v. Bandy, 93 Ind. 246; Pierce v. Spafford, 53 Vt. 394; Hunter v. Trustees, etc., 6 Hill (N. Y.) 407.

In the present case we conclude that there can be a valid common law dedication and that the facts amply show that Tracy and all of his successors in the title, until the title reached the Bittles in 1889, consented to and acquiesced in the use of the ground by the public as and for a public burying ground, and that the same was accepted and used by the public as such, which acts make a good common law dedication. [Baker v. Vanderburg, and other cases, supra.]

III. The evidence is not so clear upon the question of adverse possession of ten years by defendant. Certain admissions of his were proven tending to show that the adverse possession might not have extended back more than two years. But conceding that defendant, three or four years after the elder Bittle purchased in 1889, did remove the remains of the old fences and cleared off the brush and thereafter used the ground in question as he used his other ground, and claimed title thereto, yet this does not deprive the public of the beneficial use thereof for a public purpose consistent with the dedication.

In other words, the dedication of the land was for a public or charitable use, and the Statute of Limitations will not assist the defendant. Our statute, Revised Statutes 1899, section 4270 reads: "Nothing contained in any Statute of Limitations shall extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use, or to any lands belonging to this State." This property falls within the purview of that statute. In discussing this question in the Campbell case, supra, we said: "Land may be dedicated to pious and charitable purposes, as well as for public ways, commons and other easements in the nature of ways. [Pearsall v. Post, 20 Wend. 111.] Now it seems to us that the dedication in this case falls fairly enough within the general definition of charitable and pious purposes. [Commissioners v. Church, 30 Kan. 620.]"

That such lands are of that character is fully recognized by section 6, art. 10, of the Constitution, where they are exempted from taxation. We conclude therefore that the defendant's plea of the Statute of Limitations can not avail him in this case. [See Williams v. St. Louis, 120 Mo. 403; Brown v. City of Carthage, 128 Mo. 10; Railroad v. Baker, 183 Mo. 312; City of Columbia v. Bright, 179 Mo. 441.]

IV. Is this the proper action? Is the plaintiff a proper party to maintain it? These questions are both pressed for our consideration. The general rule, supported by a long list of adjudicated cases, is thus stated in 6 Cyc., p. 720: "While there is no right of property in a dead body in the ordinary sense of the term, it is regarded as property so far as to entitle the next of kin to legal protection from unnecessary disturbance and wanton violation or invasion of its place of burial. Equity has jurisdiction to enjoin an unwarrantable disturbance or interference with a burial ground or the graves therein."

In the Davidson case, supra, which was an injunction as this, the Illinois court said: "It has been suggested that the bill cannot be maintained in the names of the two complainants. The complainants were residents of the neighborhood. They had friends buried in the burying ground, and were thus interested in preserving, for themselves and the public, the burying ground as it had been established, and we are of opinion that they had the right to sue in behalf of themselves and others having a like interest. [Beatty & Ritchie v. Kurtz, 2 Pet. 585.] The bill was brought, and in our judgment, properly for the protection of the rights of the people in that particular locality, and we perceive no reason why it may not be maintained in the names of a part for the benefit of all, as well as if all directly interested had joined in the bill."

In the Boyce case, supra, the Supreme Court of Maryland has well said: "The complainants, who are relatives of the dead deposited therein, may invoke the remedial power of the court, to prevent the desecration of the ground where repose the ashes of their kindred. The material facts of this case, both as to the subject-matter and the competency of the complainants to maintain their suit, are analogous to the case of Beatty & Ritchie v. Kurtz, decided by the Supreme Court of United States in 2 Peters 566. It was there held not to be a case for the redress of a mere private trespass: the property dedicated to public and pious uses threatened with desecration—the sepulchres of the dead with violation—the sentiment of natural affection of the surviving kindred and friends of the deceased to be wounded, the memorials erected by piety and love removed, so as to leave no traces of the last home of their ancestors to those visiting the spot in future generations, were acts that could not be redressed by the ordinary process of law. The remedy must be sought in the protecting power of a court of

equity, operating by injunction to preserve the asylum of the dead and quiet the just and natural sensibilities of the living.''

The plaintiff having near relatives buried in this graveyard has a peculiar right in the maintenance of this public use, and in preventing an obstruction to the public use. In such case he can maintain the action and injunction is the remedy. [Longworth v. Sedevic, 165 Mo. 221.]

That citizens having an interest in the maintenance of a public use can maintain a suit to enforce their rights is fully recognized in the recent case of State ex rel. Titus v. Railroad, 206 Mo. l. c. 258, and cases cited.

V. Has there been an abandonment of this graveyard? We think not. The idea of abandonment has been most elegantly expressed by BEARDSLEY, J., in Hunter v. Trustees of Sandy Hill, 6 Hill (N. Y.) l. c. 414, wherein he says: ''What right, if any, may hereafter arise in favor of those who can make titles from the original owners, it is not necessary now to inquire. The land is still a public graveyard, inclosed, known, and recognized as such. When these graves shall have worn away; when they who now weep over them shall have found kindred resting places for themselves; when nothing shall remain to distinguish this spot from common earth around, and it shall be wholly unknown as a graveyard; it may be that some one who can establish a good 'paper title,' will have a right to its possession; for it will then have lost its identity as a burial ground, and with that, all right founded on the dedication must necessarily become extinct.''

In Kansas City v. Scarritt, 169 Mo. l. c. 484, 485, a case wherein the city had passed an ordinance forbidding further interments in a burying ground, on the question of abandonment, SHERWOOD, J., tersely said:

''This contention, as will be observed, assumes

Tracy v. Bittle.

that the mere prohibition of future burials in itself worked an abandonment, but there can be no such magic in the simple declaration of a legislative intent, especially when it is not accompanied by any act of performance, or any other act of notification, as above indicated, to the reversionary owners. A cemetery is none the less a graveyard because further interments in it become impossible. It only loses its character as a resting place of the dead when those already interred are exhumed and removed. Notwithstanding the ordinance of 1857, the graves were undisturbed until 1866, and not until 1878 were all of the bodies removed from the premises."

In the case at bar most of those buried there are yet there. It is true that for some years no new interments have been made, but it is still the resting place of the dead. To this plaintiff and others sacred memories are awakened in viewing the spot. They cluster around the little half-worn mounds there. It is true that for some years this ground has not been kept in a condition commensurate with these memories. The vicissitudes of life sometimes may have been such as, for awhile, to make them forget these sacred memories, but such forgetfulness does not authorize the desecration of the graves of their loved ones, by strange hands. They have a right to return to the spot and, as it were, bury their forgetfulness, and do homage to their sacred memories, by placing these resting places in proper and appropriate condition and if there is a public burying ground, as in this case, no strange hand can forbid them.

Under the facts and the law this graveyard has not as yet been abandoned.

VI. Although this is a public burying ground, and although it has not been abandoned, yet the decree in this case is too broad. This decree says "that the defendant has no right thereto" and in this the chancel-

lor went a step too far. The public use was created by common law dedication and not by deed. In such case the right of reverter must be considered. In 5 Am. and Eng. Ency. Law (2 Ed.), 797, the text-writer says: "Where lands has been dedicated to cemetery purposes, and there has been a lawful and effectual abandonment of the cemetery as such, the land will revert to the original owner. But where lands are conveyed absolutely, and in fee simple, there will be no resulting claims, although abandoned for cemetery purposes."

There is thus drawn a distinction between lands conveyed by deed for a valuable consideration, and lands merely dedicated to a public use. In the latter class of cases, if there comes a time when the bodies are all removed, or when by other conditions a clear abandonment of the graveyard is made apparent, then the right of the public, which is somewhat in the nature of an easement, ceases, and the land reverts to the original owner or his grantees. By mere ceasing to make further interments does not abandon the graveyard, as we have seen, so long as it is kept in condition to be known and is known as a burying ground. The defendant in this case has no right to the possession of these grounds so long as they are kept and maintained as a burying ground. The public has the beneficial use thereof. The defendant has a reversionary interest. He holds the fee subject to the use aforesaid. The finding and decree should be modified in accordance with these views, and we will and do so modify said judgment here, in accordance with the views herein expressed.

The judgment so modified is affirmed.

All concur, except *Valliant, P. J.*, absent.