A. F. Hutchinson Land Company, Inc., Plaintiff, *v.* Whitehead Brothers Company, Defendant.

Supreme Court, Saratoga County, July 9, 1926.

Pleadings — answer — Civil Practice Act, § 262, does not require defendant as condition to averring new matter to make admissions of facts alleged which shall preclude him from denying them on trial — cemeteries — action for damages on ground part of tract of land which defendant sold plaintiff was public cemetery in which defendant did not have good title — answer, which after denying material allegations of complaint, claimed abandonment of easement in said property for cemetery purposes and title by adverse possession, is sufficient in law — land was subject to easement whether it was duly dedicated for cemetery purposes or whether it was merely private burying ground — Laws of 1868, chap. 777, do not prohibit alienation of said land — title by adverse possession to land set apart for cemetery purposes may be acquired when said land has lost identity as such — Town Law, § 332, does not prohibit assertion of defense of adverse possession.

Section 262 of the Civil Practice Act permits a defendant to set up in his answer as many defenses or counterclaims or both as he has. He cannot be required as a condition to averring new matter to make an admission of the facts alleged in the complaint which shall preclude him from denying them on the trial, for a defense may be hypothetically predicated upon a fact alleged in the complaint.

Accordingly, in an action for damages on the ground that part of a tract of land, which the defendant by deed containing full covenants of warranty sold the plaintiff for division into building lots, was a public cemetery, and that defendant could not give good title thereto, separate defenses contained in defendant's answer, after material allegations of the complaint had been denied, claiming an abandonment of any easement which the town wherein the cemetery was located or the public or any individual ever had in the property for cemetery purposes and title in the defendant and its predecessors by adverse possession long prior to the time when the title to said premises could have vested in the town, do not imply any such admission of the allegations of the complaint as to warrant being stricken out as insufficient in law.

Whether the land in question was a duly dedicated public cemetery in which the public had its easement, or whether it was merely a family burying ground in which only members of the family had any rights, the only right was an easement; that being so, it follows that the plea of abandonment contained in defendant's answer is sufficient in law and that defendant should have an opportunity to establish it on the trial.

Chapter 777 of the Laws of 1868 does not prohibit alienation of the premises, since it is apparent from an examination of the statute that its only purpose was to commit to the local authorities the control of the easement theretofore possessed by the community in general.

Where a place set apart for cemetery purposes ceases to be a place of burial, or where it has been permanently appropriated to a use or uses entirely inconsistent with its purpose as a cemetery, or where it has been so neglected as to lose its identity as such, title by adverse possession can be acquired and section 332 of the Town Law does not preclude the assertion of such a defense.

Title by adverse possession may be obtained against a State or town or against individuals to any land that is not held by the State in trust for public purposes and such title may be obtained provided it matures before the public has acquired title thereto.

MOTION to strike from the answer two affirmative defenses upon the ground that the same are insufficient in law upon the face thereof.

*Robert W. Fisher*, for the plaintiff.

*Merrill, Rogers, Gifford & Woody* [*Wilson B. Brice* and *Robert Frazier* of counsel], for the defendant.

HEFFERNAN, J.   Plaintiff and defendant are foreign corporations, the former organized under the laws of the State of Maine and the latter under the laws of the State of New Jersey.   The plaintiff is engaged in the business of developing and marketing real estate for building purposes.   During the month of April, 1925, the defendant, by deed containing full covenants of warranty, sold the plaintiff a tract of land located in the town of Halfmoon in the county of Saratoga.   Plaintiff has brought this action to recover damages, claiming that part of the land conveyed was a public cemetery and that the defendant could not give good title thereto. The complaint contains two causes of action.   The first is grounded in fraud and deceit in that, it is claimed, the defendant made false representations as to its title.   The second count is based upon alleged breaches of covenants in defendant's deed.   The plaintiff charges that a portion of the land conveyed has been used as a cemetery for over 100 years; that it was duly dedicated to, and accepted by, the public as a cemetery and that the inhabitants of the town in which the lands are located used it as a cemetery for more than 14 years and that the title thereto thereby became and still is vested in said town; that prior to the vesting of title

thereto in said town and subsequently to such dedication, the remains of a large number of persons were interred in as many graves beneath the surface of the soil and that the heirs of the dead buried therein are in the undisturbed possession of said graves and have been in possession thereof for' more than said period of 100 years and are invested with certain sepulchral rights therein and with certain rights thereto and therefrom by reason of such interments. There are also allegations to the effect that such lands were a public burying ground situate without the limits of any city or village and not subject to the ownership or control of any incorporated cemetery association, church or other incorporated body, and that such burying ground is subject to the provisions of chapter 777 of the Laws of 1868. It is also alleged that the plaintiff was desirous of obtaining premises for the purpose of its business, for division into building lots and for the construction of houses thereon, and that such facts were known to the defendant; that the defendant knew of the existence of the graveyard upon the tract of land which it owned and of its want of title thereto and that it was chargeable with such knowledge; that the defendant falsely and fraudulently represented and stated to the plaintiff that it was the owner of said premises and that the same were adapted to residential purposes; that it concealed from the plaintiff the fact that the premises were incumbered by the existence of a graveyard and by the inclusion of human remains therein, and that such representations and concealments were made and kept by the defendant with intent on its part that they should be acted upon by the plaintiff and plaintiff did rely thereon and had no knowledge of the existence of such graveyard; that after the plaintiff acquired title thereto it entered upon the premises for the purpose of improving them and then discovered that a part of such land had been used by the public as a cemetery and that graves were located thereon. The second count alleges that the deed was founded on a valuable consideration and purported to convey the premises in fee simple, free from incumbrances, and that the premises were not free from incumbrances; that they are incumbered by such cemetery and that the incumbrance is inextinguishable.

The answer, after denying the material allegations of the complaint, sets forth two separate defenses, an abandonment of any easement which the town or the public or any individuals ever had in the property for cemetery purposes, and title in the defendant and its predecessors by adverse possession against all the world long prior to the time when the title to said premises could have vested in the town in which the same are situated.

The plaintiff's motion is to strike out these separate defenses.

Counsel for the plaintiff insisted on the argument and contends in his brief that the separate defenses contained in the answer imply an admission of the allegations of the complaint. No such assumption is permissible. At common law the rule of pleading required that a plea, seeking to avoid the declaration, should confess directly or by implication that independently of the matter disclosed in the plea to destroy it, the action could be maintained. Such a plea could not be accompanied by a denial. This was so, as quaintly phrased by the common-law writers, in order to " give express color to the plea." (*Brown* v. *Artcher*, 1 Hill, 266.) The old system of pleading, based on centuries of experience and founded on logical and scientific rules, was abolished by the Code of Procedure (§ 140). Evidently it was the intention of the law makers to so simplify the rules of pleading and practice that the unlettered and the unlearned might act as their own counsel in courts of justice. It was designed by legislative fiat to make every man his own lawyer. The Code of Procedure not only abolished the prior practice and forms of pleading but it introduced an entirely new system. The result was not an alteration of that then in existence but a radical change. The Code of Procedure (§ 150, subd. 2) permitted a defendant to set forth in his answer as many defenses or counterclaims or both as he had, and an objection that they were inconsistent was not available. The Code of Civil Procedure, like its predecessor (§ 507), substantially re-enacted those provisions. The Civil Practice Act (§ 262) as the successor to the Codes, contains identical language. A defendant cannot be required, as a condition of averring new matter, to make an admission of the facts alleged which shall preclude him from denying them on the trial. A plea in avoidance is not necessarily deemed to include a confession. In order to avoid, a defendant need not confess. He has a right to put the plaintiff to his proof. (*Taylor* v. *Richards,* 9 Bosw. 679.) A defense may be hypothetically predicated upon a fact alleged in the complaint.

It is well settled that land may be dedicated to the public for cemetery purposes. A gift of land for such a purpose may be considered as in the nature of a dedication for a pious or charitable use. (*Beatty* v. *Kurtz,* 2 Pet. 566; *City of Cincinnati* v. *Lessee of White,* 6 id. 431; *Smith* v. *Wilder,* 6 Hawaii, 228; *Wormley* v. *Wormley,* 207 Ill. 411; *Redwood Cemetery Assn.* v. *Bandy,* 93 Ind. 246; *Mowry* v. *City of Providence,* 10 R. I. 52; *Hunt* v. *Tolles,* 75 Vt. 48; *Tracy* v. *Bittle,* 213 Mo. 302; 18 C. J. 47.) The law contemplates two classes of graveyards, public and private. There is no such thing as the dedication of property to private use.

The proprietor of land can dedicate it to a public use and if there is an acceptance by the public, rights are acquired therein. On this theory a public graveyard may be established without a deed from the original owners. The privilege or license incident to sepulcher, in the absence of express restriction, includes more than the mere naked right of depositing dead bodies in the ground, for with it is included the right to interment according to the usual custom and also the right of the living to express their affection and respect for the dead by visitation and ornamentation of the place of burial. No prescriptive right which will descend to heirs can be acquired by burying dead bodies in private grounds. (*Wooldridge* v. *Smith*, 243 Mo. 190.) The Roman law not only hallowed a cemetery but regarded a single lawful burial as a dedication of such a site to religious use. This right, however, might be extinguished by nonuser and cemeteries were reserved from trade only as long as burials remained. (*Clarke* v. *Keating*, 183 App. Div. 212.) The ecclesiastical law, as administered by the established Church of England, regarded burial of the dead as a temporary appropriation of the soil " until the buried dead had moulded into dust." The dogma of the English ecclesiastical law gave to the church exclusive temporal authority over the remains of the dead. This power was not only executive but judicial. The church took the body into its actual custody and decided all controversies involving the question of interment. The church adjudicated who should be allowed to lie in consecrated earth and in fact who should be interred at all. Burial was entirely a matter of " ecclesiastical cognizance " and the secular courts, stripped of all authority over the dead, confined themselves to the protection of the monument and other external emblems of grief erected by the living. The English courts held that burial is as much a matter of ecclesiastical cognizance as the prayers that are to be used or the ceremonies that are to be performed at the funeral. The church was invested with title to a dead body. In other portions of Europe during the semi-barbarous state of society, the law permitted a creditor to seize the dead body of his debtor, and in ancient Egypt a son could borrow money by hypothecating his father's corpse. (*Matter of Brick Presbyterian Church* [Note from Referee's report], 4 Bradf. 503.) The maxims, doctrines and practices of the ecclesiastical law of England have never become a part of our system of jurisprudence. Under our law there is no right of property in a dead body in the ordinary acceptation of that term. (*Finley* v. *Atlantic Transport Co.*, 220 N. Y. 249; *Hasselbach* v. *Mount Sinai Hospital*, 173 App. Div. 89; *Foley* v. *Phelps*, 1 id. 551.) While there is no right of property

in a dead body in the ordinary sense of the term, it is regarded as property so far as it is necessary to entitle the next of kin to legal protection from violation or invasion of its place of burial. (17 C. J. 1137, 1138.)

At common law the right of the public in a cemetery was a mere easement. The title to the land was not in the public nor in the relatives of the persons buried therein. A common-law dedication did not pass the fee. (*Hunter* v. *Trustees of Sandy Hill,* 6 Hill, 407; *Campbell* v. *City of Kansas,* 102 Mo. 326.) Where land is conveyed subject to an easement in the public to use the same as a cemetery, the possession and beneficial use of such land, on the public's abandonment of the cemetery, reverts to the grantee. (*Badeaux* v. *Ryerson,* 213 Mich. 642.)

In *Hunter* v. *Trustees of Sandy Hill* (*supra*), in discussing the question of dedication and its effect, the court makes use of this language: " Dedication, as the term is used in reference to this subject, is the act of devoting or giving property for some proper object, and in such manner as to conclude the owner. The law which governs such cases is anomalous. Under it, rights are parted with and acquired in modes and by means unusual and peculiar. Ordinarily, some conveyance or written instrument is required to transmit a right to real property: but the law applicable to dedications is different. A dedication may be made without writing; by act *in pais*, as well as by deed. It is not at all necessary that the owner should part with the title which he has; for dedication has respect to the possession, and not the permanent estate. Its effect is not to deprive a party of title to his land, but to estop him, while the dedication continues in force, from asserting that right of exclusive possession and enjoyment which the owner of property ordinarily has. (*Cincinnati* v. *Lessee of White,* 6 Pet. Rep. 431, 438.) The principle upon which the estoppel rests is, that it would be dishonest, immoral or indecent, and in some instances even sacrilegious, to reclaim at pleasure property which has been solemnly devoted to the use of the public, or in furtherance of some charitable or pious object. The law therefore will not permit any one thus to break his own plighted faith; to disappoint honest expectations thus excited, and upon which reliance has been placed. The principle is one of sound morals, and of most obvious equity, and is in the strictest sense a part of the law of the land. It is known in all courts, and may as well be enforced at law as in equity."

In *Campbell* v. *City of Kansas* (*supra*) the action was brought to recover possession of a tract of land, and the court, in discussing the question as to what constitutes a dedication of real property

to the public for a graveyard, said: " While the plat of 1847 could not operate to pass the fee simple of this land to the public, or to any trustee of the public, it constitutes an important and controlling fact in the evidence to establish a dedication of the use of the land as claimed by the defendant. The donation of the land was marked on the original plat of 1847, which was made by one of the proprietors, and was used by him at the public sale which took place soon thereafter. The public accepted the use thus indicated by burying their dead on the land for about ten years. The plat and the use of the land, as indicated by the plat, were acquiesced in by all the proprietors. These facts constitute the best evidence possible of a dedication *in pais* to the public, which dispenses with the necessity of written instruments, as well as the existence of a grantee or trustee. Such I understand to be the established law of the State on the subject of dedications of land to public use. *Becker* v. *St. Charles*, 37 Mo. 13; *Putnam* v. *Walker*, 37 Mo. 600; *Rutherford* v. *Taylor*, 38 Mo. 315; *Price* v. *Thompson*, 48 Mo. 365; *Reid* v. *Board of Ed.*, 73 Mo. 304."

A public highway may also be established by dedication, and when the owner opens it and invites acceptance of the same, and the public authorities formally, or in terms, accept it as a highway it then becomes such. The owner, however, does not part with his title to the land but only with the right to possession for the purpose of a highway. (*City of Cohoes* v. *Delaware & Hudson Canal Co.*, 134 N. Y. 397.)

Whether the land in question was a duly dedicated public cemetery in which the public had its easement, or whether it was merely a family burying ground in which only members of the family had any rights — in either event the only right was an easement. Neither the public in the one case nor the relatives of the deceased persons in the other, obtained a fee to the premises in question.

The right to an easement may be lost or abandoned, and upon such loss or abandonment it is clear that the right to possession of the land reverts to the owner. In other words, the use with which the owner parts is but temporary and not perpetual. (11 C. J. 58; *Hunter* v. *Trustees of Sandy Hill, supra; Campbell* v. *City of Kansas, supra; Clarke* v. *Keating, supra; Board of Commissioners of Mahoning County* v. *Young*, 59 Fed. 96; *Newark* v. *Watson*, 56 N. J. L. 667; *Beardslee* v. *French*, 7 Conn. 125; *Board of Education* v. *Edson*, 18 Ohio St. 221; *Gumbert's Appeal*, 110 Penn. St. 496; *Tracy* v. *Bittle, supra.*)

In 11 Corpus Juris (*supra*) the law on the subject is stated as follows: " So long as a cemetery is kept and preserved as a resting place for the dead, with anything to indicate the existence of graves,

or so long as it is known or recognized by the public as a cemetery, it is not abandoned. But, where a cemetery has been so neglected as entirely to lose its identity as such, and is no longer known, recognized, and respected by the public as a cemetery, it may be said to be abandoned."

Where land has been dedicated to cemetery purposes and there has been a lawful and effectual abandonment of the cemetery as such, the land will revert to the original owner. (11 C. J. § 21, p. 59.)

In *Hunter* v. *Trustees of Sandy Hill* (*supra*), in discussing the same subject, the court said: " What right, if any, may hereafter arise in favor of those who can make title from the original owners, it is not necessary now to inquire. The land is still a public graveyard, enclosed, known, and recognized as such. When these graves shall have worn away; when they who now weep over them shall have found kindred resting places for themselves; when nothing shall remain to distinguish this spot from the common earth around, and it shall be wholly unknown as a graveyard; it may be that some one who can establish a good ' paper title,' will have a right to its possession; for it will then have lost its identity as a burial ground, and with that, all right founded on the dedication must necessarily become extinct."

In *Campbell* v. *City of Kansas* (*supra*) the action was in ejectment by John Campbell and others, as owners in common, against the city of Kansas, for the recovery of a block of ground situated in that city. The court there held that the original use of land dedicated for a graveyard terminates and the fee vests in the original owners or their legal representatives free from it, when the public cease to bury in the ground and refuse or neglect to erect or preserve monuments to indicate the identity of those already buried, or to give and continue to the place the character and name of a graveyard. In that case the court held that the land dedicated to the public for a graveyard was abandoned. In submitting the case to the jury the trial judge instructed them as follows: " (1) The court instructs the jury that, to constitute abandonment of a graveyard, it is not sufficient that burials therein have ceased or been prohibited. So long as it is kept and preserved as a resting place for the dead, with anything to indicate the existence of graves, or so long as it is known or recognized by the public as a graveyard, it is not abandoned. On the other hand, it may contain the remains of the dead, and yet be abandoned. If no interments have for a long time been made, and cannot be made, therein, and, in addition thereto, the public, and those interested in its use, have failed to keep and preserve it as a resting place for the dead, and have

permitted it to be thrown out to the commons, the graves to be worn away, grave-stones and monuments to be destroyed, and the graves to lose their identity, and if it has been so treated and used or neglected by the public as to entirely lose its identity as a graveyard, and is no longer known, recognized and respected by the public as a graveyard, then it has been abandoned; or if the public, and those interested in its use as a graveyard, have permanently appropriated it to a use or uses entirely inconsistent with its use as a graveyard, in such a way as to show an intention of permanently ceasing to use it as a graveyard, and it has become impossible to use it as a graveyard, then it has been abandoned; and in determining the question of abandonment the jury should take into consideration all the facts and circumstances given in evidence. (2) Although you may believe from the evidence that the land in controversy was dedicated, at the time and in the manner as alleged in defendant's answer, to the public for its use as a graveyard, and that the public, for a number of years after such dedication, used the said land for such purpose, if you further believe from the evidence that the public, and those interested in the use of said land as a graveyard, had before the commencement of this suit abandoned the same as a graveyard, and that the same was not at the commencement of this suit a graveyard, and was in possession of defendant, then you should find for the plaintiff."

The Missouri Supreme Court affirmed the judgment and expressly indorsed its approval of the instructions given to the jury in the court below. Counsel for the plaintiff criticises this decision and states that its authority has been entirely repudiated by more recent decisions in the Missouri courts and cites *Tracy* v. *Bittle* (*supra*) to sustain his assertion. In the latter case the court held that under the facts disclosed there had been no abandonment, but instead of criticising the doctrine announced in the *Campbell* case, it fully indorsed it as evidenced by the following excerpt taken from the opinion: " Although this is a public burying ground, and although it has not been abandoned, yet the decree in this case is too broad. This decree says ' that the defendant has no right thereto ' and in this the chancellor went a step too far. The public use was created by common-law dedication and not by deed. In such case the right of reverter must be considered. In 5 Am. & Eng. Ency. Law (2d ed.) 797 the text writer says: ' Where land has been dedicated to cemetery purposes, and there has been a lawful and effectual abandonment of the cemetery as such, the land will revert to the original owner. But where lands are conveyed absolutely, and in fee simple, there will be no resulting claims, although abandoned for cemetery purposes.' There is thus drawn

a distinction between lands conveyed by deed for a valuable con-
sideration, and lands merely dedicated to a public use. In the
latter class of cases, if there comes a time when the bodies are all
removed, or when by other conditions a clear abandonment of the
graveyard is made apparent, then the right of the public, which is
somewhat in the nature of an easement, ceases, and the land reverts
to the original owner or his grantees."

The court also quoted with approval the very eloquent language
of BEARDSLEY, J., in *Hunter* v. *Trustees of Sandy Hill* (*supra*),
touching the same subject.

The plaintiff urges that chapter 777 of the Laws of 1868 expressly
prohibits the alienation of the premises in question and calls
attention to the following language in that act, that such lands
" are hereby deemed and declared to be dedicated to public use as
burial places for the dead, and shall not be used or occupied for any
other object or purpose * * * *." By its terms this is a
special act for the regulation of public cemeteries in Saratoga
county. The statute applies only to those cemeteries " which are
public and common." It dedicates them to public use as burial
places. It prescribes the duties as to upkeep upon town boards
and gives to these boards the power to consent to the removal of
any remains therefrom. It is quite apparent that the only purpose
was to commit to the local authorities the control of the easement
theretofore possessed by the community in general. Prior to the
enactment of section 195 of chapter 569 of the Laws of 1890 (now
section 332 of the Town Law as amd. by Laws of 1920, chap. 577)
towns acquired no title to lands dedicated to cemetery purposes
except where the title was conveyed by deed, but the whole right of
the town authorities and of the public consisted of an easement.
That section provides, among other things, that " the title to every
lot or piece of land which shall have been used by the inhabitants
of any town in this state as a cemetery or burial ground for the
space of fourteen years shall be deemed to be vested in such town,
and shall be subject in the same manner as other corporate prop-
erty of towns, to the government and direction of the electors in
town meeting."

The proposition " once a cemetery, always a cemetery " is not
without support. (*Brendle* v. *German Reformed Cong.*, 33 Penn. St.
415, 422; *Hook* v. *Joyce*, 94 Ky. 450.) In *Brendle* v. *German Reformed
Cong.* (*supra*) the judge writing the opinion said: " We hold that
the ground once given for the interment of a body is appropriated
forever to that body. It is not only the *domus ultima*, but the *domus
oeterna*, so far as eternal can be applied to man, or terrestrial things."

In *Hook* v. *Joyce* (*supra*) the action was in ejectment to recover

a cemetery lot. The court held that title to an easement in a burial lot may be acquired by prescription where adverse possession for that purpose is held for the statutory period. That case is also authority for the proposition that adverse possession of a burial lot is held by its use for a burial place with or without inclosures as long as gravestones stand marking the place as burial ground. That case was referred to and criticised by the Supreme Court of Missouri in *Wooldridge* v. *Smith (supra)*.

Every humane instinct urges that the last resting place of the dead should be preserved from profanation, and the desecration of such place should make a strong appeal to the conscience of the court. When, however, the land has lost its sacred character, when the remains of those who lie buried in the soil have disintegrated and mingled with the dust beneath, when there is nothing left to identify the ashes that lie buried there, when the names of the dead are no longer heard in the ears of men and not even a trace of their memory remains, then, it seems to me, no plausible reason suggests itself to the mind why such land should be withheld from serving the needs of a community solely for sentimental reasons. It would be just as logical, just as consistent, to venerate all the mortal habitations of the great army of the dead, and particularly those scenes which witnessed their sorrows and their joys. To perpetually preserve the soil as sacred and hallowed ground, under such circumstances, does honor to neither the living nor the dead. These views, it seems to me, are in accord with precedent. (*Gilbert* v. *Buzzard*, 3 Phil. Eccl. 335; *Campbell* v. *City of Kansas, supra*.)

In *Gilbert* v. *Buzzard (supra)* Sir William Scott said: " It has been argued that the ground once given to the interment of a body is appropriated forever to that body * * *. The time must come when his posthumous remains must mingle with and compose a part of the soil in which they have been deposited. * * * The legal doctrine certainly is, * * * that the common cemetery is not *res unius oetatis*, the exclusive property of one generation now departed; but is likewise the common property of the living, and of generations yet unborn, and subject only to temporary appropriation."

In *Campbell* v. *City of Kansas (supra)* Judge Martin, who wrote for the court, has so ably expressed the rule which should apply in such cases that his language is well worthy of repetition: " All expressions declaring an eternal and perpetual use should be accepted with qualifications which arise from the nature of the subject-matter, and from necessities of the public good. No human body committed to the earth preserves forever either identity or trace of

form. No monument placed above it is proof against the corroding touch of time. In the progress of the ages, both body and monument fade away. * * * If every portion of ground which has been made a burial place for man should be devoted in perpetuity for burial uses, the most populous and cultivated districts of the world, where millions upon millions of the human race have sunk into the earth in the countless ages of the past, would have to be abandoned as a dwelling-place or means of support to the living inhabitants of the present day. The devotion of land to any particular use must be subject to the changes and vicissitudes which time may bring to it. The use of a graveyard is twofold,—for the purpose of continuous burials, and for the purpose of preserving the remains and memory of those who have been buried. The original uses can be continued only by the public continuing to bury, or by continuing to protect the remains already buried, and to preserve the identity and memory of the persons who have left them. It can hardly be said that there is anything compulsory on the public to do this, although desecration can be prevented at the instance of anyone. The public may cease to bury in the dedicated ground whenever it pleases. It may also refuse or neglect to either erect or preserve any monuments to indicate the identity of those already buried, or to give and continue to the place the character and name of a graveyard. When this happens the original use terminates, and the fee vests in the original donors, or their legal representatives, free from it. It would be unjust that the public should retain the use for any other purpose than the one for which it was dedicated."

From what has been said it is clear that the right of the public and of relatives of decedents in a cemetery which has been merely dedicated and not conveyed by deed is a mere right in the nature of an easement and hence can be abandoned so that the whole use of the land reverts to the owner of the fee, and the public and persons theretofore having rights under the easement will lose them. That being so, it follows that the plea of abandonment contained in the defendant's answer is sufficient in law. It should have the opportunity to establish its defense on the trial.

Where the ground ceases to be a place of burial or where it has been permanently appropriated to a use or uses entirely inconsistent with its purpose as a cemetery, or where it has been so neglected as to lose its identity as such, it logically follows that under such circumstances title by adverse possession can be acquired. Section 332 of the Town Law (as amd. by Laws of 1920, chap. 577) does not prohibit the assertion of such a defense. A town board is not a sovereign power. Even if it be assumed as against a

town board that adverse possession of cemetery lands would not ripen into title since 1890, it cannot be doubted that title by adverse possession could be obtained if completed before that time. Title by adverse possession may be obtained against the State or a town or against individuals to any land that is not held by the State in trust for public purposes. Such title may be obtained provided it matures before the public has acquired title thereto. This is recognized by the Supreme Court of Tennessee in *Hines* v. *State* (126 Tenn. 1; 42 L. R. A. [N. S.] 1138) where the court said: " Nor is the right barred by the statute of limitations, so long as the lot is kept inclosed, or, if uninclosed, so long as the monuments and gravestones marking the graves are to be found there, or other attention is given to the graves, so as to show and perpetuate the sacred object and purpose to which the land has been devoted. No possession of the living is required in such cases, and there can be no actual ouster or adverse possession, to put in operation the statute of limitations, so long as the dead are there buried, their graves are marked, and any acts are done tending to preserve their memory and mark their last resting place."

This principle was recognized by Mr. Justice Van Kirk in writing the opinion of the court in *People* v. *Baldwin* (197 App. Div. 285) in which he said: " The lands in question here were held for a public use before the time within which title by adverse possession could be acquired, and these defendants have not acquired title thereto."

The Court of Appeals (233 N. Y. 672) unanimously affirmed that decision.

On this motion the court is not concerned with the proof necessary to establish either defense. The questions here have nothing to do with what is necessary to constitute a dedication or whether there was one, nor with the length of time required in order for title by adverse possession to ripen as against the public or the relatives of the decedents. This inquiry is strictly limited to the sufficiency of the defenses as they appear in the answer. Enough has been shown to warrant a trial of the issues at which time the court may pronounce a formal judgment.

The motion is, therefore, denied, with costs.