THE FAIRLAWNS CEMETERY ASSOCIATION, INC. v.
THE ZONING COMMISSION OF THE TOWN OF BETHEL ET AL.

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 74444

Memorandum filed August 2, 1949

*Cummings & Lockwood,* of Stamford and Darien, for the Plaintiff.

*B. F. Sherwood,* of Danbury, *Wilson, Hanna & Wanderer,* of Danbury, and *Marsh, Day & Calhoun,* of Bridgeport, for the Defendants.

QUINLAN, J.  This action seeks a declaratory judgment that a zoning ordinance of March 25, 1947, of the town of Bethel is unconstitutional or invalid because it fails to present a comprehensive plan in pursuance of our statute, General Statutes,

§ 837, and, if found valid, that the use of the plaintiff constitutes a nonconforming use under the ordinance.

In a trial court especially, every presumption favors the validity of an ordinance and it should be sustained unless its invalidity is beyond doubt. *Murphy, Inc.* v. *Westport,* 131 Conn. 292. The mere fact, too, that an ordinance is simple will not invalidate it. *Board of County Commissioners* v. *Snyder,* 186 Md. 342, 345; see dissent, *Harris* v. *Dobbs Ferry,* 208 App. Div. (N.Y.) 853. Such regulations should have a rational relation to the health, safety and welfare of a community. *Strain* v. *Mims,* 123 Conn. 275, 286.

Bethel is a small town devoted largely to modest residences and small farms. Only by reason of its being in the metropolitan district will its growth increase, but, because of it, growth may be expected. However, while the future must be considered, the ordinance should give consideration to what the town has been and is, and where a town is simple there is no sense or need to provide for the fantastic. Indeed, without going to the extreme of "spot zoning" which can be and frequently is a vicious method of planning, a plan that fits should not be cut off in its "incubation" stage. *Miller* v. *Board of Public Works,* 195 Cal. 477, 496.

So far as cemeteries are concerned, there was abundant evidence to demonstrate that for any reasonably foreseeable growth in the future the burial facilities were quite adequate, but if that should not be the case provision was made for them in sections, which the court saw, not objectionable from an esthetic viewpoint, and so far as terrain is concerned water is no longer a barrier, if it ever was, and the mechanical means of adapting other terrain is a matter of common knowledge. Furthermore, the case of *Foster* v. *Beverly,* 315 Mass. 567, within reasonable limitations held that no provision for cemeteries would not invalidate the ordinance.

It is contended by the plaintiff that the land comes within the provisions of the ordinance for a nonconforming use as a cemetery. Some of the facts bearing upon this question seem essential. I do not share in the view advanced by the defendants that the evidence prior to the unrestricted sale by the receiver has no materiality. Change of ownership alone does not destroy a use. 58 Am. Jur. § 154; *Killian* v. *Brith Sholom Congregation,* (Mo. App.) 154 S. W. 2d 387, 394. Moreover, chronologically some of this history seems essential. It is of consequence on

whether there was a cemetery, and as to whether there was an actual use under our decisions, if indeed (a cemetery never having been defined by our court) the definition of a cemetery in this state might not involve the nature of the use.

The plaintiff is a corporation without capital stock and the certificate of incorporation was filed June 10, 1938, under the name The Mason Cemetery Association. On November 17, 1938, a certificate of change of name to The Bethel Memorial Park Association, Inc., was filed, and on October 18, 1946, another change of name to that of present plaintiff. No lots were sold, and no interment has ever occurred, nor has the receiving vault ever been utilized. No tax exemption was claimed. In June of 1938, The Mason Cemetery Association, Inc., was organized and duly incorporated to hold said property and to operate it as a cemetery. Thereafter, the property was fully landscaped and made ready for the reception of bodies. A complete drainage system was installed, including irrigation ditches, lateral drains and drainage catch basins. A small pond was developed for drainage as well as scenic purposes. A cemented fieldstone wall was erected around the property abutting the public roads and inclosing approximately two-thirds of the entire premises. A gate was constructed in said wall providing an entrance to the cemetery property, and a net of roads to provide easy access to the grave areas was laid out and completed. Extensive planting and grading were accomplished and a substantial portion of the acreage was made into lawn. A large fieldstone temporary receiving vault equipped with steel shelves and rollers for the reception of caskets and large enough to contain twelve bodies was erected at the entrance to the premises. All of these developments were accomplished at a substantial investment. However much may have been expended with a view to adapting it for cemetery purposes, the fact remains that Mr. Coster's whole project was abandoned at the time of his death in 1938, and that the purpose of the receivership was clearly to take care of unpaid bills then outstanding and to sell the property to raise enough money for that purpose. It appeared that these bills only amounted to about $3500 and that Mr. McCarthy and his predecessor tried for seven years to dispose of the property for enough money to pay off its creditors. This was finally done and the corporation paid off its bills. At that time the property now in question was sold by the receiver to Messrs. Grossman and Sylvan of New York, subject only to zoning regulations and with no mention of its

use as a cemetery. A year later the property was sold to Messrs. Hults, Dowsey and Walker by warranty deed similarly unrestricted. Mr. Parmly, the first president of the old Mason Cemetery Association, himself testified that the whole project was abandoned at Mr. Coster's death.

It does not appear that the cemetery was intended for the burial of Bethel citizens, but for a limited number of members of the Masonic Order from any place in the state. Nothing is said by counsel in their briefs about the acceptance of the cemetery. It would appear to be a private cemetery as distinguished from a public one. Ordinarily, there would have to be an acceptance. *Tracy* v. *Bittle,* 213 Mo. 302. Here there was no acceptance on the part of the Masonic Order even if there was a dedication. The cemetery association was incorporated and the incorporation certificate sets forth the purposes, but a corporation, so far as formal acts are concerned, could only speak through its records, and there is no evidence on the part of the corporation of a formal dedication. To be sure a dedication may be more or less informal provided it is acted upon. Yet in this case not only were there no interments and no lots sold, but the cemetery grounds were permitted to grow into disorder, the roads were neglected, weeds grew and, until the present owners tried to revive it for an entirely different purpose from its original conception, it ceased to exist as a cemetery at the death of Mr. Coster, from whose inspiration it grew.

It must be conceded that some of the characteristics, such as setting out, marking, landscaping, the building of roads, vault and wall are indicative of the creation of a cemetery and were it a public cemetery would probably be sufficient if followed by the interment of bodies and its use as a cemetery, but it is private in its character not only of direction and control but of use and would seem to call for a more formal acceptance and dedication than occurred here. See *Evergreen Cemetery Assn.* v. *Beecher,* 53 Conn. 551, and *Application of St. Bernard Cemetery Assn.* 58 Conn. 91.

Furthermore, we are confronted by the application of the zoning ordinance and the claim of a nonconforming use. What was there in the use after the death of Mr. Coster and the ensuing receivership that brings the facts within our law upon the question of use under our zoning decisions in this state? In the case of *DeFelice* v. *Zoning Board of Appeals,* 130 Conn.

156, 161, it is said: "Actual use as distinguished from merely contemplated use is requisite," and in reference to the erection of a structure, ". . . the fact that plans and arrangements had already been made . . . would not be sound reason for failing to enforce its [zoning] provisions." *Osborn v. Darien*, 119 Conn. 182, 195.

While as a matter of financing the issuance of land shares is recognized in other jurisdictions, the plan proposed here comes close to invading the provisions of § 4704. However, as is evident from the foregoing, since every reasonable intendment should be extended to the validity of the ordinance in the trial court, I hold it valid and, if a cemetery was created and dedicated, with no acceptance or dedication, I find that it was abandoned for such a use at the death of Mr. Coster and the ensuing receivership; that nothing occurred subsequent thereto to revive the cemetery use and that it is not a nonconforming use within the contemplation of the zoning ordinance of the town of Bethel.

Judgment for the defendants, with costs.