## 54.  MEDICAL COLLEGE OF GEORGIA *v.* RUSHING.

1. The plaintiff, in his petition, alleged, that his sick wife was received by the defendant for treatment in its hospital, where the sick and injured were received for treatment, for compensation; that she died at said hospital, and that the defendant, without his knowledge or consent, mutilated and cut up the body, "to gratify professional curiosity, or for some other unlawful purpose." *Held,* that the petition stated a cause of action.

(*a*) The right to the possession of the dead body of his wife for preservation and burial belongs to the husband.    Any unlawful and unauthorized mutilation of the remains would be an invasion of this right, for which an action for damages would lie.

(*b*) In such an action damages will be allowed for mental suffering and injury to the feelings, although no actual pecuniary loss is alleged or proved.

2. The Medical College of Georgia is not a public institution of the State because it is designated by law as a branch of the University of Georgia; and it is liable for the torts of its agents in the conduct of its business and within the scope of their authority.    Therefore, where it conducts a hospital for the treatment of the sick and injured for compensation, it is liable in damages for the unlawful and unauthorized mutilation of the remains of a patient who died at the hospital; and this would be true whether the college or the hospital was compensated for the board, lodging, and treatment of such patient, or not.

3. Public eleemosynary institutions are liable for the torts of their agents the same as private business corporations, if they have any property or are in receipt of any income, not exclusively devoted to public charity, out of which a judgment against them can be satisfied.

Action for damages, from city court of Richmond county—Judge Eve.    March 10, 1906.

Argued February 4,—Decided March 22, 1907.

*W. H. Fleming,* for plaintiff in error.    *F. W. Capers,* contra.

HILL, C. J.   This was an action for damages for the unlawful mutilation of the body of the wife of the plaintiff, without his knowledge or consent, an autopsy having been performed at the "city hospital," owned and controlled by the defendant, the Medical College of Georgia.   The family physician of the plaintiff, who was treating the wife at home, concluded that it was best to remove her to the city hospital, where everything possible could be done for her recovery.   She died at the hospital.   Plaintiff was absent from home during this whole time, and his children demanded of the authorities of the college and hospital the body of their mother, in

order that it might be prepared for burial. After some delay, the body was finally delivered to an undertaker for the children, and taken to the plaintiff's home, when it was discovered that it had been mutilated and cut up by the defendant, "to gratify professional curiosity, or for some other unlawful purpose." The damage alleged was mental suffering and injury to the feelings, caused by the wrongful act of mutilating the remains. Demurrers, general and special, were filed to the petition, and were overruled. The special demurrer, so far as material, was met by an amendment; and we direct our attention to the grounds of general demurrer.

1. It is not insisted before us by the learned and distinguished counsel for the plaintiff in error that the demurrer should have been sustained on the ground that the husband had no legal interest in or right to the body of the wife, so as to enable him to maintain an action for damage for its mutilation, on the ground that a dead body is not property. The dictum of Lord Coke that a corpse is caro data vermibus (flesh given to the worms), and is nullius in bonis, does not authorize the conclusion that those who are entitled to its possession for purposes of decent burial have no rights to and in it which the law recognizes and will protect. Whatever may have been the rule in England under the ecclesiastical law, in this country it has been universally held that there is a quasi right of property in a dead body which the law will protect. And it would be discreditable to any system of law not to provide a remedy for the violation of such right. Hackett v. Hackett, 18 R. I. 155. This is so held in a well-considered case by the Supreme Court of Minnesota, where, in an action brought by a widow for the unlawful mutilation of the body of her dead husband, an order overruling the demurrer to the complaint was affirmed, the court holding that the right to the body "is one which the law recognizes and will protect; and for any infraction of it, such as an unlawful mutilation of the remains, an action for damages will lie. In such an action a recovery may be had for injury to the feelings and mental suffering resulting directly and proximately from the wrongful act, although no actual pecuniary damage is alleged or proved." Larson v. Chase, 47 Minn. 307. And the Appellate Division of the Supreme Court of New York, in Foley v. Phelps, 1 App. Div. 551, uses the following language, which is very aptly in point: "The right is to the possession of the corpse in the same condition it was in when

death supervened. It is the right to what remains when the breath leaves the body, and not merely to such a hacked, hewed, and mutilated corpse as some stranger, an offender against the criminal law, may choose to turn over to an afflicted relative."

The Supreme Court of this State, in a very interesting and elaborate opinion by Mr. Justice Lumpkin, after reviewing the whole question, and the authorities, both in England and in this country, declares, that "a widow has an interest in the unburied body of her deceased husband, which the courts will recognize." *Louisville & Nashville R. Co.* v. *Wilson,* 123 *Ga.* 62. And in the case of *Jacobus* v. *Children of Israel,* 107 *Ga.* 518, it is held that in a suit for damages for wrongfully disinterring a dead body, exemplary damages may be awarded, if the facts and circumstances of the case justify it. It is not, however, necessary to enter into any extended discussion of the law referring to burial and the disposition of the body after death. This work has been so thoroughly done by Mr. Justice Lumpkin in the decision, supra, that we can add nothing to its completeness or to its interest. Nor do we deem it necessary to multiply authorities to establish the right of the husband to the sacred remains of his wife, untouched and unmutilated, or his redress in punitive damages for any wrongful and unlawful interference with such right. We pass to the consideration of the other questions made by the demurrer.

2. It is insisted that an action can not be maintained against the defendant, because, under the laws of this State, it is a branch of the University of Georgia, and is not liable for the torts of its officers or agents, and that all of its property is public property, and is not subject to levy and sale. The defendant was originally incorporated by an act of the legislature, approved December 20, 1828, under the name of the Medical Academy of Georgia. Acts of 1828, p. 111. By the terms of this act, it was a private corporation, and, by its corporate name, was authorized "to sue and be sued, plead and be impleaded, answer and be answered unto, in any court of law or equity;" and to make and establish its own by-laws, rules and regulations. And it was also empowered "to have, hold, use and enjoy, purchase, receive and dispose of at pleasure, land, houses, and other property, real and personal, to an amount not exceeding one hundred thousand dollars." By an act approved December 19, 1829, the name of the corporation was changed to the

Medical Institute of the State of Georgia, and its powers somewhat enlarged in reference to the right of conferring the degree of doctor of medicine upon its students. The act of December 20, 1833, again made a change in the name of the corporation, by giving it the name under which it is now known, to wit, the Medical College of Georgia. This act further made an appropriation of ten thousand dollars by the State "for the purpose of enabling the board of trustees of said institute to procure a suitable piece or lot of land, erect thereon such buildings, make such other improvements as may be necessary for the various purposes of a medical college, and to procure a suitable library," etc., "for said institution;" and it also gave to the said institution "fifty lots on the town common of the city of Augusta," said lots to be sold "and the proceeds of said sale paid over to the treasurer of said institution, . . provided, that the majority of the city council and trustees of said academy shall approve of the same." Acts 1833, p. 130. The act of December 23, 1835, provided a fund for the use and benefit of the Medical College of Georgia, by giving to its trustees the right to have, use, and enjoy, for the benefit of the college, such interest as the State had in a sixth part of the capital stock of the Bank of Augusta. This act did not give the stock to the college, but, it seems, gave to the trustees of the college simply the right to subscribe for a certain portion of the stock on certain favorable terms in lieu of the State. Acts of 1835, p. 147. The act of December 12, 1860, appropriated ten thousand dollars to the Medical College of Georgia for the purpose of educating certain young men of the State of Georgia who might be unable to pay their own expenses, to be selected by the Governor of the State. Acts of 1860, p. 66. The Political Code, §1300, designates the Medical College of Georgia as a branch of the University of Georgia. This section of the code simply designates certain institutions of the State as branches of the University, and provides that such branches are to be governed "in the manner prescribed in the respective acts incorporating the same." This is all the legislation on the subject of the Medical College of Georgia; and the question arises, does such legislation constitute the Medical College of Georgia a public institution of the State, so as to exempt it from suit, either ex contractu or ex delicto, or to prevent its property, on account of dedication to public service, from being seized and sold under execution? In other

words, is the character of this college, as a private corporation, under the act of 1828, changed to that of a public institution by the subsequent acts above noted, making appropriations to it for specific purposes, and designating it as one of the branches of the University of Georgia?

In the case of *Cleaveland* v. *Stewart*, 3 *Ga.* 291, it is held that "an incorporated academy is a private corporation, nothstanding it may derive its support in part from the government." Mr. Justice Nisbet, in delivering the opinion of the court, uses the following language: "Hospitals founded on private benefactions, and colleges founded and endowed by private liberality, although the funds may be in part derived from the bounty of the government, are private corporations." Such corporations may be the beneficiaries of the State, but that gives the State no rights over them. The State may withdraw its bounty at any time. It will be observed that in none of the acts relating to the Medical College of Georgia does the State assume any right to its control or management; but it is expressly declared in the Political Code, §1300, supra, that it is to be governed in the manner as prescribed by the acts of incorration. In the celebrated case of Allen *v.* McKean, 1 Sumner, 276, the question was whether Bowdoin College was a public corporation. It was argued that it was, because its funds had been generally derived from the bounty of the government. That great jurist, Mr. Justice Story, in a very learned opinion, decided that it was a private corporation; and that it was so notwithstanding its funds had been generally derived from the bounty of the government. In the case of Medical College of Georgia, a very small portion of its funds has been derived from the bounty of the State government; and then only for specific purposes, and not for the general use of the college. In the case of *Georgia Military Institute* v. *Simpson,* 31 *Ga.* 273, the Supreme Court doubted if that institute was suable at all. But in that case, while the institute was originally a private corporation, it was purchased by the State in 1857, and was purely a public corporation, bought with the funds of the State, and under its exclusive management and control. In other words, the whole interest in the institute belonged to the State. But in the instant case the State has no interest in the Medical College of Georgia and exercises no control over it; and the college has simply received from the State comparatively small benefac-

tions, for specific purposes. We therefore conclude that the Medical College of Georgia is a private corporation, and, as such, by the terms of its charter, can sue and be sued, and its property is not exempt from seizure and sale under execution. We can not think that the simple designation of the Medical College of Georgia as a branch of the University of Georgia makes such a radical change in its character as to repeal by implication the act of the legislature incorporating it as a private corporation, and to constitute it a public corporation and dedicate all of its property to public use and exempt it from suit.

We do not think that the fact that municipal corporations are not liable for the torts of their public officers furnishes any analogy by which a similar exemption can be claimed for the Medical College of Georgia. Municipal corporations are endowed with some portion of the governmental power, and exercise some of the governmental rights of the State, and are strictly public corporations. Civil Code, § 1833. When not in the exercise of some portion of the governmental power delegated to them, municipal corporations are liable for the torts of their agents.

3. It is urged in the next place that the Medical College of Georgia, being a public eleemosynary institution, is not liable for injury to a free patient in its hospital, caused by the negligence of its agent, or by the unauthorized act of one of its attendants, if the corporation used due care in selecting its agents. This college has been declared by the Supreme Court of Georgia to be a public eleemosynary institution. *Medical College of Georgia* v. *Rushing, 124 Ga.* 239. Is such an institution liable for the tortious acts of its agents in the same manner and under the same circumstances as individuals or private corporations? The question whether the patient is a charity patient or the institution is paid for his treatment does not change the rule of liability, if, under the law, this class of institutions is liable at all. That a private person acting without compensation is in many cases liable for negligence is well settled. In Shiells *v.* Blackburne, 1 H. Bl. 158, Lord Loughborough declared that "if a man gratuitously undertakes to do a thing to the best of his skill, where his situation or profession is such as to imply skill, an omission of that skill is imputable to him as gross negligence." Therefore, where a hospital holds itself out for the treatment of the sick, whether this treatment is to be given as a

gratuity, or is to be paid for, the implication arises that such treatment will be performed in a skilful manner, and such hospital or institution will be liable for unskilful or negligent treatment of the patient. If the rule were otherwise than as here announced, the allegations of the petition in this case, as against a demurrer, show that the treatment of patients in the city hospital controlled and managed by the defendant corporation was for compensation, and that the family of which the deceased was a member was fully able and willing to meet the expenses of her treatment at the hospital.

The claim that as a public eleemosynary institution it enjoys such an exemption is based upon two grounds, to wit: on the ground of public policy, and on the ground that the college had no funds except such as were exclusively dedicated to the charitable uses for which it was established, and which could not be diverted from their proper use to indemnify patients for injuries received by the negligence of the agents of the institution. Under the acts creating this college, it is authorized to educate young men to practice the profession of medicine and surgery; but the hospital connected with it and managed by it, according to the allegation of the petition, is for the treatment of patients for a compensation. It is, therefore, not entirely a charitable institution, but derives a revenue from its business; and we do not see why it should not be subject to the same rule of liability for the negligent conduct of its agents as any other private corporation. In the case of Glavin *v.* Rhode Island Hospital, 12 R. I. 411, it is held that one who sustains injury at a public hospital from unskilful surgical treatment by an unpaid surgeon may maintain an action therefor, although the hospital is a public charity, supported by trust funds, and the plaintiff pays nothing but a small amount for board and attendance. After considering many cases on the subject, the Rhode Island Supreme Court declares the following to be the correct doctrine: "that where there is duty, there is, prima facie at least, liability for its neglect; and that when a corporation . . is created for certain purposes which can not be executed without the exercise of care and skill, it becomes the duty of the corporation . . to exercise such care and skill; and that the fact that it acts gratuitously, and has no property of its own in which it is beneficially interested, will not exempt it from liability for any neglect of the duty, if it has funds, or the capacity of acquiring funds, for the purposes of

its creation, which can be applied to the satisfaction of any ·judgment for damages recovered against it." The English authorities lay down the · doctrine that corporations who work for the public gratuitously are liable for torts of their servants and employees the same as a private business· corporation, provided they have funds or are in receipt of an income out of which a judgment against them can be satisfied. Mersey Docks v. Gibbs, 11 H. L. 686; L. R. 1 H. L. 93; Forman v. Mayor of Canterbury, L. R. 6 Q. B. 214; Coe v. Wise, L. R. 1 Q. B. 711. It may be that public policy would demand that institutions of strictly eleemosynary character, conducted purely and exclusively·, for public charity, supported alone by public munificence, and having no property except such as was dedicated to charitable purposes, should not be liable for the negligence of their agents; but the allegations are that this defendant conducted a hospital for the reception and treatment of patients for compensation. There is no reason why, under such facts, the defendant should be exempt from liability for the culpable negligence of its agents in the conduct of its business. Certainly it would be a remarkable situation if it could escape responsibility for the actual wrong-doing of an agent in desecrating the sacred remains of a patient entrusted to its care.　　*Judgment affirmed.*

RUSSELL, J., concurring specially. I agree to the affirmance of the judgment in this case, but I do not concur in all of the reasons upon which that judgment is based. I think the plaintiff may maintain his suit because it is averred in the petition that the defendant conducted a hospital for the purpose of receiving and treating patients for compensation, and the injury alleged was committed in the conduct of this hospital. As to this outside business venture the defendant is not to be considered either as an eleemosynary institution or as a branch of the State University, exercising in behalf of the State an educational function and duty. But, in my opinion, the Medical College of Georgia is a branch of the State University, exempt from suit when acting within the scope of its powers as such, and its property exclusively used in discharging its public duty is exempt from levy or sale. To my mind, the policy of this State to have its University composed of various colleges, without regard to their physical propinquity or location, is declared in Political Code, § 1300; and as to the particular institution now under consideration it has been expressly held by the Supreme

Court that it is a branch of the State University. *Medical College* v. *Rushing*, 124 *Ga.* 241.