### 3898.  McDONALD *et al. v.* BUTLER *et al.*

1. A municipal corporation is not liable in damages for a trespass committed by its officers in wrongfully disinterring and removing the remains of a person buried in a cemetery owned and controlled by the city, unless the act was performed in pursuance of and to effectuate some corporate power conferred by the municipal charter.
2. "One who is the owner of the easement of burial in a cemetery lot, or who is rightfully in possession of the same, is entitled to recover damages from any one who wrongfully enters upon such lot and disinters the remains of persons buried therein;" and where the trespass has been wanton and malicious, or is the result of gross negligence or a reckless disregard of the rights of those entitled to sue, equivalent to an intentional violation of them, exemplary damages may be awarded.
3. The value of an easement of burial may be recovered from one who wrongfully deprives the owner of his right of user. An action to recover as damages the value of such an easement will lie against one who wrongfully disinters the body of one buried by the owner, and causes to be interred in its place, without the consent of the owner, the remains of a stranger to him.
4. Where a corpse is wrongfully disinterred, one upon whom rests the duty of reinterment may recover from the wrong-doer the expense thereby incurred.
5. The special demurrers were properly overruled.

DECIDED APRIL 2, 1912.

Action for damages; from city court of Madison—Judge Anderson. November 16, 1911.

The action was against E. W. Butler and the mayor and council of Madison, as joint tort-feasors. The petition, as amended, set forth the following facts: On April 7, 1893, plaintiffs bought from Butler, then mayor of Madison, and the mayor and council, a lot in a cemetery owned by the City of Madison, to be used as a family burying ground, and received a deed thereto. On April 8, 1893, plaintiffs interred the remains of their father in the lot, and shortly thereafter moved away from Madison. Upon their return on a visit in 1910 they found that their cemetery lot "had been sacrilegiously raided, the remains of their father ruthlessly taken without warrant, by alien hands, from the home bought and paid for by his own loved ones, and where loved ones had lain him to rest, placed in a rough box, and dumped in a hole in some out-of-the-way place, all of which was done by the said E. W. Butler and his agent, and the mayor and city council of Madison, all without warrant, cause, or authority." The defendants were not only guilty of the acts above recited, but they likewise took

possession of the lot and sold it to another, and the remains of a stranger, not connected in any way with plaintiffs, now rest thereon. This conduct of the defendants was "without warrant, cause, or justification." On November 11, 1910, written demand for compensation was served upon the mayor and council of Madison, the claim being in the following language: "Madison, Georgia, November 11, 1910. To the Hon. Mayor and City Council of Madison, Georgia. Gentlemen: This is to notify you that J. W. McDonald and C. F. McDonald hold, present, and ask settlement of the following claims and demand, jointly due by you and E. W. Butler to said claimants: City of Madison, Madison, Georgia, the honorable Mayor and City Council of the City of Madison, and E. W. Butler, to J. W. McDonald and C. F. McDonald, debtor, 1909, April. To one cemetery lot lying in the new cemetery in the said City of Madison, known and distinguished in the said cemetery as lot number 26, on the Fourth avenue, in section first, a plat of new cemetery as here referred to as being of record in book PP, folio 32, in the office of the superior court of Morgan county, Georgia, of the value of $100.00. To the expense of another lot, necessary for the purpose of reinterring the remains of their father, which were removed from the aforesaid lot and cast out in the rubbish or put in an out-of-the-way place, expense of $100.00. To cost of coffin, grave, and reinterring the remains of their father, which were removed from the aforesaid lot and cast out, expense of $125.00. March, 1910, to damage for disturbing and removing the remains of applicants' father from the aforesaid cemetery lot, and for desecrating the grave of their said father, and for taking said remains of their said father from the aforesaid cemetery lot and dumping them out elsewhere, the sum of $4,675.00, a total of $5,000.00. This notice is given pursuant to the act of the legislature of Georgia, approved on December 20, 1899." This account is made a part of the petition, and judgment prayed against the defendants for each and every item as charged in said account. The injury to plaintiffs' feelings has continued up to the filing of the suit. Punitive and exemplary damages are claimed "by reason of the act and intention, and of the gross, wanton, reckless, cruel conduct of the defendants," above described. The defendants demurred, generally and specially; the demurrers were sustained, and the plaintiffs excepted.

*Williford & Lambert,* for plaintiffs.

*E. H. George*, *Samuel H. Sibley,* for defendants.

POTTLE, J. 1. It needs little argument to show that the city is not liable for exemplary or punitive damages for the alleged conduct of its officers in desecrating the grave and disinterring the remains of the plaintiffs' father. Even if authority to remove the bodies of deceased persons from their resting places could be conferred upon a municipal corporation as a legitimate exercise of the police power, the General Assembly has not attempted to expressly confer such authority upon the City of Madison, and it will not be implied from the general welfare clause in the city's charter, or from the authority, granted in an amendment to the charter, to own and regulate cemeteries and interments therein. Acts 1906, p. 837. The alleged conduct of the members of the council was ultra vires and wholly beyond the scope of their official duty. The trespass was not the result of an exercise of corporate powers, and the corporation would not be liable even though its governing body commanded the performance of the act. In such a case the corporation is not estopped to plead the want of corporate power. The rule is succinctly stated by the Supreme Court as follows: "Where an act is done by the officers and agents of a municipal corporation, which is within the corporate power and might have been lawfully accomplished had the municipal authorities proceeded according to law, the corporation will be liable for the consequences of an act of such officers or agents proceeding contrary to law or in an irregular manner. Aliter, where the act complained of lies wholly outside of the general or special powers of the corporation." *Langley* v. *Augusta,* 118 *Ga.* 590 (4), (45 S. E. 486, 98 Am. St. R. 133). See also *Roughton* v. *Atlanta,* 113 *Ga.* 948 (113 S. E. 64); *City Council of Augusta* v. *Mackey,* 113 Ga. 64 (38 S. E. 339); *Gray* v. *Griffin,* 111 *Ga.* 361 (36 S. E. 792, 51 L. R. A. 131); Civil Code (1910), §§ 893, 897; 4 Dillon, Mun. Corp. (5th ed.), § 1650 et seq. It is argued that since the city sold the cemetery lot and thus gave colorable authority to the grantee to remove the body of the plaintiffs' father, it ought to be liable for the natural consequences of its act in making the deed; but this position is not tenable. We need not discuss the question whether the city had in 1893 power under its charter to lay out and own a cemetery. Certainly the mere grant

of an easement of burial in a cemetery lot would not make the corporation liable for exemplary or punitive damages for the act of the grantee or of officers of the city in disinterring and removing from the lot the remains of one previously buried there. No act of its governing body could make it liable for such a trespass. The act of making the second sale of the lot was within the corporate power, but the unlawful trespass was not so connected with, or the consequence of, the lawful act as to render the city liable for the tort. Since all of the items of damage claimed were traceable to and grew out of the trespass in disinterring and removing the body, the general demurrer of the city was rightly sustained.

2. As to Butler, the petition stated a case. His counsel do not contest the correctness of the principle decided in *Jacobus* v. *Children of Israel,* 107 *Ga.* 518 (33 S. E. 853, 73 Am. St. R. 141), that "one who is the owner of the easement of burial in a cemetery lot, or who is rightfully in possession of the same, is entitled to recover damages from any one who wrongfully enters upon such lot and disinters the remains of persons buried therein." See, also, *Wright* v. *Hollywood Cemetery Corporation,* 112 *Ga.* 884 (38 S. E. 94, 52 L. R. A. 621) ; *L. & N R. Co.* v. *Wilson,* 123 *Ga.* 62 (51 S. E. 24, 3 Ann. Cas. 128) ; *Medical College* v. *Rushing,* 1 *Ga. App.* 468 (57 S. E. 1083). His point is that only special damages are laid, and that, there being no claim for general damages, the petition was rightly dismissed as to Butler, because the allegations are not sufficient to support the claim for exemplary or punitive damages. See *Wright* v. *Smith,* 128 *Ga.* 432 (57 S. E. 684). The authorities cited in the *Jacobus* case show the rule to be that damages may be recovered where the act of disinterment was done either wantonly or negligently. Mere negligence will authorize the recovery of general damages. But in order to authorize the recovery of exemplary damages, it must appear that the "injury has been wanton and malicious, or is the result of gross negligence or a reckless disregard of the rights of others, equivalent to an intentional violation of them." *Jacobus* v. *Children of Israel,* supra. Where there are aggravating circumstances, either in the act or the intention, punitive damages may be awarded. Civil Code (1910), § 4503. There is no prayer for general damages, but the averments sufficiently state a case entitling plaintiffs to recover exemplary or punitive damages. It is true the petition does not allege

in terms that the act was wilfully done; but it does allege that Butler himself, as mayor, executed the deed to the plaintiffs; that he and others ruthlessly and without warrant of law desecrated the grave, took the remains therefrom, placed them in a rough box, and "dumped" them into a hole in an out-of-the-way place; that he and the other defendants sold and delivered possession of the lot to another person, who interred therein the body of a stranger to plaintiffs. The law is not over-particular about what a thing is called. From the facts pleaded the law will presume that the act was wilful and wanton, and done with a reckless disregard of the rights of the plaintiffs. In addition to this, there is a sufficient averment of aggravating circumstances, both in the act and in the intention, to authorize the imposition of punitive damages. The mere absence of a headstone or monument would not excuse the desecration of the grave. When it was discovered, no matter how, that a human body had been interred on the lot, the grave should have been held sacred and the body allowed to remain undisturbed in its last resting place. Certainly, upon discovery of the grave, the most diligent and searching inquiry should have been made, to discover ownership of the lot and the identity of the person whose remains lay buried there. Nor would the mere fact of the apparent abandonment of the lot justify the ruthless invasion of the sacred precincts of the grave. Neglect of a child, though never so gross, to care for the grave of his parent will not excuse one who wantonly or negligently disinters the corpse and removes it elsewhere. The law recognizes and holds sacred that respect which all natural persons are presumed to have for the memory of the dead; and when the feelings of a child have been wounded in the manner described in the petition, damages will be awarded. We have no means of knowing what the truth is. Of course, if there has been an honest mistake, and no malice and no gross negligence, and no such reckless disregard of the rights of the plaintiffs as would be equivalent to an intentional violation of them, they would not be entitled to recover exemplary or punitive damages. These are questions to be decided upon the coming in of the evidence. The defendant has not been heard. If the real truth be as stated in the brief of his counsel, a very different case will be presented.

3. The claim for compensation for the value of the lot taken from plaintiffs was demurred to, upon the ground that, as the

plaintiffs still own the lot, they can not recover its value. Tortious deprivation of land, where the owner has the fee in the soil, will not give rise to an action sounding in tort, to recover as damages the value of the land; because ejectment lies to recover the land, and a double recovery of the land and its value would not be allowable. But where an easement of mere right of user has been destroyed, the owner can not maintain ejectment. *Stewart* v. *Garrett,* 119 *Ga.* 386 (46 S. E. 427, 64 L. R. A. 99, 100 Am. St. R. 179) ; Powell, Actions for Land, § 50. His only remedy is in tort, where the measure of damages will be the value of the easement. Here the lot remains, but the body of a stranger to plaintiffs reposes there. No one with proper respect for the memory of a deceased loved one would care to lay his remains beside those of an alien in blood. The law will not require plaintiffs, in order to obtain the full enjoyment of their easement of burial, to commit an act similar to that which the defendants are alleged to have performed. Their easement is lost to them, as they say, by the conduct of the defendants. The plaintiffs bought and paid for the lot, and those who wrongfully deprived them of their right to its full and complete enjoyment ought to pay whatever the easement may be shown to have been worth at its fair market value. Of course, if Butler was in no way concerned with the interment of the body of the stranger to the plaintiffs, this item of damage could not be recovered from him.

4. The defendants specially demurred to the claim for the cost of reinterment of the body of the plaintiffs' father, upon the ground that it was not alleged that the plaintiffs actually expended the amount sued for. If the plaintiffs did not themselves incur this expense, they can not recover for these items, but we think the petition sufficiently alleges that they did so. The averment that defendants are indebted to plaintiffs for the "expense of another lot," in the sum of $100, and for the "cost of coffin, grave, and reinterring the remains of their father" at an "expense of $125.00," is equivalent to an allegation that plaintiffs incurred the expense claimed.

5. There was no misjoinder of causes of action. There was but one cause of action alleged, namely, the wrongful disinterment of the dead body; and the several items of damage sought to be recovered relate to different elements growing out of and conse-

quent upon the tort. The allegation in reference to the continuance of the tort was simply an averment that plaintiffs' feelings were still wounded and they continued to suffer mortification and humiliation. If the facts stated in the petition be true, time will never wholly heal the wounded feelings of the children of him whose grave was desecrated in the manner described in the petition. The demurrer of course admits these facts.

The judgment will be affirmed in so far as it dismissed the petition as to the city, but reversed in so far as it sustained the demurrer filed by Butler.

*Judgment affirmed in part, and in part reversed.*