MAYES *et al. v.* SIMONS *et al.*

No. 12987. MARCH 15, 1940.

*W. Tom Veazey* and *T. Reuben Burnside,* for plaintiffs.

*Joel H. Terrell, L. D. McGregor,* and *Ficklen & Pilcher,* for defendants.

BELL, Justice. This was an action by D. L. Mayes and Miss America Mayes against the present owner of a described tract of land, Mrs. M. L. Felts, and her tenant, E. E. Simons, seeking to enjoin cultivation and other trespasses with respect to a designated portion of the land, upon the alleged ground that more than one hundred years ago it was appropriated by the plaintiffs' grandfather as a family cemetery, and that it continued to exist as such until the husband of the present owner, after acquiring the tract

in 1924, "cleared off and plowed over said cemetery lot" and removed markers from the graves of the plaintiffs' grandparents. The petition alleged that the trespasses were continued by the defendants, and that the defendant owner and her husband as predecessor in title, under whom she now claims by devise, each knew before acquiring the property "that said cemetery lot was located thereon and that plaintiffs' grandparents were buried therein." The plaintiffs not only sought injunction to restrain further trespass, but prayed for judgment for a stated sum as punitive damages. The petition alleged that there were in all about fifteen people buried in "said cemetery lot," but there was no allegation as to who the other people were, and the plaintiffs claimed no interest in any of the graves except those of their grandfather and of his first and second wives, the latter being the plaintiffs' grandmother.

The defendants filed an answer, denying existence of the cemetery as alleged, and specifically averring that they had no actual or constructive notice of any such cemetery at the time of acquiring the property or possession thereof. The answer also contained the following: "The defendants, being in equity, for further answer state that they are willing for the court to send an officer on to the alleged location of the cemetery lot to determine if there are any graves located in said field and, if so, how many, and with their consent for the plaintiffs to erect a marker upon each grave so found." In his charge to the jury, the judge submitted the case only as a suit for injunction, expressly declining to submit the claim for damages. The jury found for the defendants. The plaintiffs filed a motion for new trial on the general grounds and three special grounds. The motion was overruled, and the plaintiffs excepted.

■ The evidence showed that the last burial in the plot claimed as a cemetery occurred in the year 1868, and, although conflicting in some respects, authorized findings to the effect that the graves in question were never marked except by rocks, without inscription, on the side of one of them, the size and number of the rocks not being shown in the record; that by neglect and inattention for more than fifty years the graves had ceased to bear any sign likely to attract attention to their existence as such; that the space so occupied had lost all appearance as a cemetery before the husband

of the principal defendant purchased the property upon which such cemetery lot may have been formerly situated; and that such purchase was made in good faith, and without knowledge or notice of the existence of such cemetery. Under this version of the testimony, which the jury were authorized to adopt, the verdict for the defendants may be sustained upon the theory of either laches or estoppel. On the general grounds, the verdict is sustainable also on the theory of abandonment *as between the parties*. In support of this statement, some further reference to the pleadings and the evidence may be pertinent. The plaintiffs alleged that the plot was appropriated by their grandfather as a private cemetery some time before the year 1815, and that his first wife was buried there during that year. Their grandfather was married a second time, and his second wife was the grandmother of these plaintiffs. The grandfather was buried in this cemetery in 1837, and their grandmother was buried there in 1868. So far as appeared, the plaintiffs had no other relative buried at this place. Only one of the plaintiffs, D. L. Mayes, testified; and he could give no more than the Christian name of one additional person who was buried there. The plaintiffs did not proceed upon the theory that this was a public cemetery, but, as just stated, alleged only that it was appropriated as a private cemetery. There was no claim of *dedication* to the public. There was no evidence to show that any one of the plaintiffs or other member of the family ever did anything toward care of the graves or maintaining the cemetery as such until after purchase of the land surrounding it by Mr. Felts sometime in the year 1924. Mr. Mayes testified, however, that a predecessor in title of Mr. Felts did give to the graves some care and attention about thirty years ago. He further testified: "The graves of my grandmother and my father [grandfather] and his first wife were not marked. He was buried between them. There were some stones there—some rocks. The rocks were on the side of the grave. The rocks were about that big [indicating]. My sister, Miss America, was there at the time my grandmother was buried. My mother was there too. My grandfather was dead. Since that time I have been back over there. As to whether there is anything out there where that cemetery lot is to show the boundaries, or about where they were, there was until they were ploughed in. There were sunken down graves there. I did not see

anything around the cemetery. Times were quite different then. Anybody can tell now if they go out there; the soil on the cemetery lot is not the same color as the surrounding soil."

It will be noticed from this statement that according to the witness the only signs of the graves were some "rocks . . on the side of the grave," inferably only one grave, that of the grandfather; that the earth was "sunken" over these graves; and that the soil on the lot was different from that of surrounding soil. On the other hand, Mrs. Felts and a former tenant or cropper of her husband both gave testimony from which the jury were authorized to find that at the time of purchase of the land by Mr. Felts the place had ceased to bear any sign of these graves or of the existence of the cemetery as such; and one witness testified: "The cemetery was done away with along in 1921 or 1922." The jury were thus authorized to find that the plot of ground had lost all appearance as a place of burial before the purchase of the land by Mr. Felts, and the evidence as a whole authorized the inference that he purchased the land in good faith and without notice of such cemetery.

As to what will constitute abandonment of a cemetery, the decisions of the several courts that have dealt with the subject do not appear to be in perfect accord. In 10 Am. Jur. 512, § 36, it is stated: "As long as a cemetery is kept and preserved as a resting place for the dead, with anything to indicate the existence of graves, or as long as it is known and recognized by the public as a graveyard, it is not abandoned. Thus, where the bodies interred in a cemetery remain therein and the spot awakens sacred memories in living persons, the fact that for some years no new interments have been made and that the graves have been neglected does not operate as an abandonment and authorize the desecration of the graves. A cemetery does not lose its character as such merely because further interments in it become impossible, as where further burials are prohibited by ordinance or legislative enactment. The view has been expressed that a graveyard loses its character as such and is abandoned only when the remains interred therein are exhumed and removed by those having authority to remove them. On the other hand, even in jurisdictions which recognize the general rule that it is not abandoned so long as there are bodies there, if interments have not been made for a long time, and can not be made therein, and in addition the public, and those in-

terested in its use, have failed to keep and preserve it as a resting place for the dead, and have permitted it to be thrown out to the commons, the graves to be worn away, gravestones and monuments to be destroyed, so that the graves have lost their identity, or if it has been so treated or neglected by the public as entirely to lose its identity as a graveyard, and is no longer known, recognized, and respected by the public as such, then it has been abandoned." Several cases are cited for this general statement. See especially Tracy v. Bittle, 213 Mo. 302 (112 S. W. 45, 15 Ann. Cas. 167); Frost v. Columbia Clay Co., 130 S. C. 72 (124 S. E. 767); Roundtree v. Hutchinson, 57 Wash. 414 (107 Pac. 345, 27 L. R. A. (N. S.) 875). In Hunter v. Sandy Hill, 6 Hill (N. Y.), 407, will be found the following dictum: "When these graves have worn away; when they who now weep over them shall have found kindred resting places for themselves; when nothing shall remain to distinguish this spot from the common earth around, and it shall be wholly unknown as a graveyard,—it may be that some one who can establish a good 'paper title' will have a right to its possession; for it will then have lost its identity as a burial ground; and with that all rights founded on the dedication must necessarily become extinct."

The present case does not require any precise statement as to what may constitute abandonment of a cemetery, since in any view of this question the jury were authorized to find that the graves and the surrounding area had been so neglected that the plot had lost its identity and appearance as a place of burial before the purchase of the land by Mr. Felts; that he purchased in good faith and without notice; and hence that, with respect to the claims of these particular defendants holding under him, the plaintiffs should be treated as having abandoned such cemetery, regardless of whether they did actually abandon it, or of whether they might be so treated as to persons having notice. On the subject of sale and conveyance of land containing a private cemetery, but without any reservation in the deed of conveyance, as to which no ruling is now made, see Wooldridge v. Smith, 243 Mo. 190 (147 S. W. 1019, 40 L. R. A. (N. S.) 752); Hines v. State, 126 Tenn. 1 (149 S. W. 1058, 42 L. R. A. (N. S.) 1138); Sapper v. Mathers, 286 Pa. 364 (133 Atl. 565, 47 A. L. R. 1172, 1174); 10 Am. Jur. 490, § 7.

From what has been said, the court can not declare that the ver-

dict in favor of the defendants is contrary to the evidence or without evidence to support it.

■ The judge having charged the jury that if they should believe under the evidence that the deceased relatives of the plaintiffs were buried "at this particular place," as claimed, and "that the spot can be identified," it would be the duty of the jury to return a verdict in favor of the plaintiffs; and having thus submitted the question of the plaintiffs' right to injunction, and the jury having under the evidence and such charge found in favor of the defendants, it is apparent that they would not have found for the plaintiffs on the claim for damages, and that the failure of the court to submit such claim for determination was harmless, if erroneous. It follows that there is no merit in the first special ground. *McBride* v. *Georgia Railway & Electric Co.,* 125 *Ga.* 515 (54 S. E. 674); *Tyus* v. *Duke,* 178 *Ga.* 800 (6) (174 S. E. 527); *Howard* v. *Georgia Railway & Power Co.,* 35 *Ga. App.* 273 (8) (133 S. E. 57). This ruling is not intended as an approval of the charge here referred to. See division 4, infra.

■ In the second special ground, the movants complained of a charge substantially in the language quoted from the answer, in the preceding statement. It is apparent from the record that this charge was a mere statement from the pleadings, and that it must have been so understood by the jury. This ground does not show cause for reversal. *Georgia Railway & Electric Co.* v. *Carroll,* 143 *Ga.* 93 (2) (84 S. E. 434); *Bray* v. *C. I. T. Corporation,* 51 *Ga. App.* 196 (2) (179 S. E. 925); *Gledhill* v. *Harvey,* 55 *Ga. App.* 322 (4) (190 S. E. 61).

■ In the third and last special ground the movants complained of the failure of the court to charge the jury that if they should believe that the plaintiffs' relatives were buried in the cemetery lot, as alleged, then the plaintiffs had an easement therein and had the right to preserve and protect the same; and that if the jury should believe that the alleged acts of trespass were committed by the defendants and were such as to make it impossible to locate the particular graves of their said relatives, then the plaintiffs would have the right to mark off or fence the entire cemetery lot. Such a charge would have been more favorable to the plaintiffs than the law would justify, in that it omitted other elements which should have been considered, in view of the issues developed by the plead-

ings and the evidence. For this reason, if not for others, the judge did not err in failing to charge as stated.

The rulings made above do not conflict with the rulings in any of the following cases: *Jacobus* v. *Congregation of the Children of Israel,* 107 *Ga.* 518 (33 S. E. 853, 73 Am. St. R. 141) ; *O'Neal* v. *Veazey,* 143 *Ga.* 291 (84 S. E. 962) ; *McDonald* v. *Butler,* 10 *Ga. App.* 845 (74 S. E. 573) ; Cochran v. Hill (Tex.), 255 S. W. 768, relating to established and continuing cemeteries; or with Hook v. Joyce, 94 Ky. 450 (22 S. W. 651, 21 L. R. A. 96), relating to adverse possession by gravestones which continued to "stand marking the place as burial ground." On the general subject, see Wooldridge v. Smith, Hines v. State, and Sapper ·v. Mathers, supra. The court did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*