## 36414.   ADAMS *v.* THE STATE.

Decided February 25, 1957—Rehearing denied March 11, 1957.

*R. Howard Gordon, Rupert A. Brown,* for plaintiff in error.
*Carey Skelton, Solicitor-General,* contra.

CARLISLE, J. 1. The defendant was indicted under Code § 26-8109 and was convicted. In special ground 1 (numbered 4) of his amended motion for new trial, he complains of the use of the word "removal" in the court's charge. In the charge the judge directed the jury's attention to the fact that the defendant contended the marker in question was not erected at the grave of the named deceased. He further charged that that contention was not a valid defense and charged the following: "That the defendant would not be authorized to remove such marker or injure such marker or such tombstone from the cemetery plot. I mean to say, gentlemen, removal and injury and if the defendant did so, that is, injure the marker or tombstone or monument wilfully and wantonly, you will be authorized to find him guilty." Several times prior to the above charge, the court had instructed the jury that injury or destruction must be shown before a conviction could be had. Therefore, if the judge had improperly used the word "removal", taking the charge as a whole, the jury could not have been misled, as the judge in his charge as a whole correctly charged the law in said case and the word "removal" in one place in the charge was immediately corrected, if the word "removal" be error. However, the court is of the opinion that if a monument or tombstone is dismantled and removed, the monument is certainly destroyed and this would be true whether the elements which went into the construction of the monument were destroyed or not.

2. Special ground 2 (numbered 5) complains of the following charge: "That it was not necessary that the State prove that the burying ground was tended to or cared for if defendant knew that it was a private burial ground, that the state or condition of it would be immaterial." The defendant contends that there was no reservation of the burial ground in the deeds under which he claimed title. However, he admitted that he knew it was a burial ground, and endeavored to justify his action by establishing that the same was not cared for and looked after. The defendant admitted that he had discussed with one or more persons prior to the time that he is alleged to have injured and destroyed the tombstone, the erection of a tombstone and the care of the graves in this private burying ground. He thereby knew that the plot

had not been abandoned, as the markers over the graves were still there and the defendant would not have been justified in injuring or destroying the particular tombstone which he is alleged to have destroyed even though the cemetery had not been cared for and there had been no recent burials there. Under the law it could not be considered to be abandoned as long as there were tombstones and markers on the graves sufficient to put one on notice that it was a burial ground and cemetery. Furthermore, it is not necessary for the State to show any reservation of title as set out in Code § 26-8110 in a prosecution under Code § 26-8109, under which the defendant was prosecuted and convicted.

3. Special ground 3 (numbered 6) contends that the evidence did not authorize the verdict of guilty since there was no proof of injury or destruction of the marker or tombstone which the defendant was prosecuted for injuring and destroying. The evidence disclosed that the marker, after having been erected to mark the grave of the named deceased was by the defendant and under his directions with his authorized agent by the aid of a bulldozer dug from the grave plot, carried some distance with soil, rubbish, and vegetation and buried in a ditch or low place on movant's property outside the boundary of the burying ground. Therefore, we hold that the tombstone and tombstone marker and monument were destroyed as a monument under the evidence in this case, and that the State would not have the burden of proving that the tombstone or monument removed from the grave was itself destroyed, because when a monument is taken up and moved and concealed by burying it, the monument as a monument is certainly destroyed as such, even though the elements that went into the construction of the monument were themselves not destroyed. When the marker and tombstone were erected over the grave of said deceased it became a different entity from that of a mere slab of granite. It became an integral part of the grave. Therefore, pushing it over, pulling it down and carrying it off and burying it in an unknown spot most certainly damaged and destroyed it as a tombstone and monument. Moreover, there is evidence in this case that the burial of the tombstone in the ground with the rubbish and soil did injure it.

4. Special ground 4 (numbered 7) contends that, since the evidence establishes a violation of Code § 26-8110 (mutilation of the grave), the defendant could not have been convicted of injury to the marker on the grave in violation of § 26-8109. There is no merit in this contention because he was not being prosecuted under § 26-8110, and, therefore, whether he violated that section or not, is immaterial in so far as this case is concerned.

5. Special ground 5 (numbered 8) contends that the court erred in its refusal to admit certain testimony of witnesses which the defendant claims would have shown that the cemetery was not cared for and had been abandoned. The evidence discloses that the cemetery and two markers on graves in said cemetery were visible from the road which was some distance from the cemetery. Further, the defendant admitted that he knew the markers were there and that he instructed his agent to remove the markers and that he recognized it as a burying ground and as a marker thereon. Therefore, the defendant's contention that the court committed error in the refusal to admit in evidence testimony of witnesses which he claims would have shown that the cemetery was not cared for and had been abandoned was not error because the evidence would not, if admitted, have been a justification for the removal and destruction of the tombstone and monument. In 10 Am. Jur. 512, § 36, it is stated: "As long as a cemetery is kept and preserved as a resting place for the dead, with anything to indicate the existence of graves, or as long as it is known and recognized by the public as a graveyard, it is not abandoned. Thus, where the bodies interred in a cemetery remain therein and the spot awakens sacred memories in living persons, the fact that for some years no new interments have been made and that the graves have been neglected does not operate as an abandonment and authorize the desecration of the graves. A cemetery does not lose its character as such merely because further interments in it become impossible, as where further burials are prohibited by ordinance or legislative enactment. The view has been expressed that a graveyard loses its character as such and is abandoned only when the remains interred therein are exhumed and removed by those having authority to remove them. On the other hand, even in jurisdictions which recognize

the general rule that it is not abandoned so long as there are bodies there, if interments have not been made for a long time, and cannot be made therein, and in addition the public, and those interested in its use, have failed to keep and preserve it as a resting place for the dead, and have permitted it to be thrown out to the commons, the graves to be worn away, gravestones and monuments to be destroyed, so that the graves have lost their identity, or if it has been so treated or neglected by the public as entirely to lose its identity as a graveyard, and is no longer known, recognized, and respected by the public as such, then it has been abandoned." See also in this connection *Mayes* v. *Simons*, 189 *Ga.* 845, 848 (8 S. E. 2d 73, 130 A. L. R. 245), and cases cited.

6. In regard to the general grounds of the motion for a new trial, the evidence authorized the jury to convict the defendant and the verdict of the jury was authorized by the evidence and in accordance with the law. "Any person who shall wilfully or wantonly injure or destroy any inclosure around or within any public or private burying ground, or any monument, tombstone, or other fixtures therein, shall be guilty of a misdemeanor." *Drew* v. *State*, 18 *Ga. App.* 34 (1) (88 S. E. 716). The court did not commit error in denying the motion for new trial as amended.

There having been a dissent to the original opinion affirming this case, the case was, pursuant to the Act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232; Code, Ann. Supp., § 24-3501), considered by the court as a whole.

*Judgment affirmed. Gardner, P. J., Quillian and Nichols, JJ., concur. Felton, C. J., and Townsend, J., dissent.*

TOWNSEND, J., dissenting. A fair statement of the facts shown by this record reveals that the defendant bought the tract of land on which the Neese burying ground was situated about 1925 without knowledge of its existence and without reservation of any kind by deed or plat of it as a burial ground; that when he bought the land the graves could not be seen because of trees and brush which had been cut down and accumulated over the area; that there were more than 2 or 3 graves but all except two were unmarked, that of these one had a monument which had been broken and the monument on the other had been placed there around 1930, after the defendant's acquisition of the property,

without his knowledge or consent; that, other than this, nothing was done toward cleaning up or tending the graves in the 30 years during which he owned the place; that the defendant had attempted to get the heirs to accept a deed back to the burial ground after his discovery of its existence, but no one was interested in taking it over; that the last interment was in the year 1907 and 1908; that the place was unfenced and an eyesore, grown up in briars and other vegetation, and was back about 30 feet from a public road.

Under such circumstances, following the decision of *Mayes* v. *Simons*, 189 *Ga.* 845 (8 S. E. 2d 73), it is clear that, as between the parties, heirs of the persons buried in this plot could not complain if the defendant removed the markers and cleared and plowed the land. The unique question (so far as our research shows) remains as to whether in such circumstances the removal of the marker in question constitutes a crime against the State. No one has been injured by the act except members of the family now living who, by their failure to reserve the land as a cemetery when it was sold at an administrator's sale, placed the defendant in the situation he is now in. The moral, religious, or aesthetic reactions of the average person toward the desecration of a grave (even though it be old or abandoned) should have no part in this decision. This area in question was without doubt unsightly and had not been used as a burial place for over 50 years. Fee simple title had vested in the defendant owner. It will be noted that although the question of title was not decided in *Mayes* v. *Simons*, supra, there is there cited the case of Wooldridge *v.* Smith, 243 Mo. 190 (147 S. W. 1019, 40 L. R. A. (NS) 752) which holds that as there can be no dedication of property to private use, a proprietor of lands cannot, except by following certain statutory procedure, dedicate land as a family burial ground in the absence of a grant or reservation in the deed of sale. To the same effect see A. F. Hutchinson Land Co. *v.* Whitehead Bros. Co., 217 N.Y.S. 413 (127 Misc. 528) ; Morgan *v.* Collins School House, 160 Miss. 321 (133 So. 675) ; 14 C.J.S. 78, Cemeteries, § 19. Under Code § 26-8110, originally a part of the Act of 1842 and appearing in its present form since the Code of 1860, it is a misdemeanor to injure or destroy a private burying

ground "which has been reserved in any private or public sale of the surrounding land," from which it follows that, where the burial ground is private and no reservation of title has been made, it is not a crime against the State to destroy the burial ground itself, including the bodies buried therein. Code § 26-8109, which is the subject of this indictment, also appeared in the Code of 1860 but referred to public burial grounds only. It was amended by adding the words "or private burying grounds" in 1875. Since it is illogical to suppose that the legislature intended to fix a penalty for mere injury to a grave marker under circumstances where injury to the grave itself, and the remains of loved ones, might be done with impunity, it should be supposed, on a strict construction of the law, that the legislature meant to give the words "private burying ground" the same meaning they had in the subsequent Code section—that is, "private burying ground which has been reserved in any private or public sale of the surrounding land," and as defined in *Pritchett* v. *State*, 51 *Ga. App.* 228 (179 S. E. 915). *Epping* v. *City of Columbus*, 117 *Ga.* 263 (3) (43 S. E. 803). No decided case suggests anything to the contrary. The plot in question in *Mathews* v. *State*, 33 *Ga. App.* 178 (125 S. E. 781), was reserved in the deed. The burying ground in *Drew* v. *State*, 18 *Ga. App.* 34 (88 S. E. 716), while referred to as a private burying ground, is shown by the record therein to have been a family plot in a public cemetery. No case in this or any other jurisdiction, so far as I can find, has held a defendant criminally liable under facts similar to those herein set forth. I think a new trial should be granted on the general grounds. Felton, C. J., joins in this dissent.