**FOREST HOME CEMETERY ASSOCIATION, Plaintiff and Appellant,**

v.

**DARDANELLA FINANCIAL CORPORATION, Defendant and Appellee.**

Nos. 13663, 13669.

Supreme Court of South Dakota.

Considered on Briefs Sept. 9, 1982.

Decided Feb. 16, 1983.

---

Dennis C. McFarland of McFarland & Petersen, Sioux Falls, for plaintiff and appellant; Scott C. Petersen of McFarland & Petersen, Sioux Falls, on the brief.

James R. Feyder of Simons, Gibbs, Feyder & Myers, Sioux Falls, for defendant and appellee; James R. Myers of Simons, Gibbs, Feyder & Myers, Sioux Falls, on the brief.

MORGAN, Justice.

This appeal arises from an action brought by appellant Forest Home Cemetery Association (Forest Home), against appellee Dardanella Financial Corporation (Dardanella), seeking to quiet title to a cemetery. The circuit court entered a summary judgment declaring Dardanella to be the lawful owner of the property by adverse possession. Forest Home appeals and we reverse.

In 1892, Forest Home incorporated for perpetual existence to purchase and hold real estate "for the sale, use and purpose of a burial ground." The cemetery, consisting of five acres, was part of a fourteen-acre tract deeded to Forest Home for use as a

cemetery. Forest Home subsequently recorded a plat to the five-acre cemetery tract. Burials took place therein until at least 1906. Although the exact number is not available, there were between fifteen and fifty burials in the cemetery during this time. Those buried there include a civil war veteran, a husband and wife, and numerous orphans. From the 1890's to 1961, the governmental subdivision in which the cemetery plat was located was conveyed several times. Each conveyance specifically excluded the five-acre cemetery. In 1961, Lee Rensberger, the sole stockholder of Dardanella, purchased this governmental subdivision; however, the warranty deed did not exclude the cemetery property as in previous transfers. In 1962, Rensberger maintained an action to remove from the cemetery the remains of the only marked gravesite, that of the husband and wife. In 1963, Rensberger began to pay real estate taxes on the cemetery property in an effort to obtain title to the property pursuant to SDCL 15–3–15. In 1978, Rensberger transferred this property to Dardanella. It is undisputed that Dardanella plans to use these five acres in a planned residential development in Sioux Falls, South Dakota. Forest Home's board of directors commenced this action to quiet title in 1980. Both parties moved for a summary judgment and, upon a summary judgment awarding title to Dardanella, Forest Home appeals contending that Dardanella is not entitled to title through adverse possession. Dardanella also appeals, contending that Forest Home's board of directors did not have authority to bring this action.

We first examine Dardanella's contention that Forest Home is not authorized to bring this action. Below, Dardanella moved to dismiss this action alleging that Forest Home was a "defunct" corporation and the directors were not qualified to maintain this action. The trial court denied this motion and Dardanella appeals.

The general rule is: where the period of its existence is not limited by its charter, a corporation will exist indefinitely and until it is legally dissolved. *Pontiac Improvement Co. v. Leisy,* 144 Neb. 705, 14 N.W.2d 384 (1944); 18 C.J.S. *Corporations* § 78 (1939) and Supp. (1982). Forest Home provides in its Articles of Incorporation that it is created for an unlimited period of time. Consequently, Forest Home exists until it is legally dissolved.[1]

Legal dissolution of a corporation may result from either voluntary dissolution, SDCL 47–26–1 to 10, or involuntary dissolution, SDCL 47–26–16 to 36. Neither of these procedures has been maintained to dissolve Forest Home's corporate status. Thus, Forest Home is deemed to continue in existence.

We further note that presumption should be indulged in favor of its legal existence after a corporation has gone into operation. *State v. Hardin County Rural Electric Cooperative,* 226 Iowa 896, 285 N.W. 219 (1939). In *Yankton Nat. Bank v. Benson,* 33 S.D. 399, 146 N.W. 582 (1914), this court addressed whether a corporation existed. There, the corporation in question was formed for a definite period of years and we held that such a corporation "once shown to exist will be presumed to be a corporation during the period of 20 years thereafter, but such presumption will be subject to be overthrown by slighter evidence as the length of time increases after its existence is shown." 33 S.D. at 405, 146 N.W. at 584.

In *Yankton Nat. Bank* we also specifically discussed the rule regarding the existence of a corporation formed for perpetual existence. That rule is " '... that the corporation, having been shown to have been legally created and organized, is in judgment of law supposed to continue to exist until the contrary is shown.' " 33 S.D. at 404, 146 N.W. at 584 (citation omitted). Forest Home here has shown through its

---

1. SDCL 47–22–6 permits nonprofit corporations to be formed for perpetual existence. That statute provides, in pertinent part:

    The articles of incorporation shall set forth:

    . . . .

    (2) The period of duration, which may be perpetual[.]

Articles of Incorporation, Exhibit A, and its Certificate of Good Standing from the South Dakota Secretary of State, Exhibit B, that it was legally created and continues to exist. Dardanella has not offered any evidence to show that Forest Home does not legally exist. Thus, Dardanella has not overcome the presumption that Forest Home continues to legally exist as a corporation.

Dardanella's motion for dismissal also alleges that the directors were not qualified to be on Forest Home's board of directors. SDCL 47–29–6 requires "[e]ach director of a cemetery corporation must be the sole proprietor of a lot in the cemetery thereof." When Forest Home initiated this action to quiet title, not all of the directors were owners of a lot in the cemetery. Subsequently, all of the directors who did not own lots purchased lots in the cemetery. Immediately thereafter, Forest Home's board of directors passed a resolution to ratify the board's initiating this quiet title action against Dardanella.

■ The law is clear that the actions of "de facto" directors of a corporation are valid and binding as to third parties. Henn, Law of Corporations § 206 (1970); 19 Am. Jur.2d *Corporations* § 1103 (1965). A "de facto" director is one in possession of and exercising the powers of the office under the claim and color of an election or appointment although he is not an officer or director "de jure." 19 Am.Jur.2d *Corporations* § 1100 (1965). Though an individual elected as a director of a corporation may fail to meet the statutory requirement of owning stock in the corporation, that individual may act as a de facto director. *Id.* at § 1102. Here, Forest Home's directors did not initially own lots in the cemetery as required by SDCL 47–29–6. They were, however, in the possession of and exercising the powers of the office of directors under the claim and color of appointment and thus were "de facto" directors. As "de facto" directors, their action in initiating this quiet title suit is valid. Further, their subsequent purchase of lots resolved their failure to comply with statutory requirements and

their resolution approving this quiet title suit expressly ratified the initiation of this suit. Under these circumstances, the directors of Forest Home validly initiated this suit. Accordingly, the trial court properly denied this motion to dismiss.

We now turn to whether Dardanella has gained title through adverse possession. Forest Home brought this action as a suit to quiet title, and Dardanella raised as a defense that it had gained title through adverse possession.

We noted that " '[t]he burden of proving title by adverse possession is upon the one who asserts it[,]' " *Cuka v. Jamesville Huttarian Mut. Soc.,* 294 N.W.2d 419, 422 (1980) citing to *Broadhurst v. American Colloid Company,* 85 S.D. 65, 74, 177 N.W.2d 261, 266 (1970) and that such proof "must be by clear and convincing evidence." *Cuka,* 294 N.W.2d at 422. The issue as framed by the trial court in the memorandum opinion was: "Is an abandoned cemetery, which still contains the remains of human beings, subject to adverse possession?" The trial court went on to conclude that "assuming the instant property, an abandoned cemetery, still contains the remains of human beings, it is nonetheless subject to adverse possession." We disagree.

■ To claim ownership by adverse possession, the possession of the property must be actual, open, visible, notorious, continuous and hostile to the true owner's title. 3 Am.Jur.2d *Adverse Possession* § 6 (1962). *See Sioux City Boat Club v. Mulhall,* 79 S.D. 668, 117 N.W.2d 92 (1962). Generally, while the doctrine of appropriation may apply to an abandoned cemetery lot, 3 Am. Jur.2d *Adverse Possession* § 204 (1962), the doctrine does not apply to a cemetery as a whole. 14 C.J.S. *Cemeteries* § 22 (1939). Here, Dardanella attempts to apply the doctrine to the entire cemetery. Dardanella contends because "interments have not been made for a long time," *see* 14 Am. Jur.2d *Cemeteries* § 21 (1964), and the cemetery "has been so neglected as entirely to lose its identity as such," *A.F. Hutchinson Land Co. v. Whitehead Bros. Co.,* 127 Misc. Rep. 558, 566, 217 N.Y.S. 413, 421, aff'd 218

App.Div. 682, 684, 219 N.Y.S. 413, 416 (1926), that this cemetery is abandoned.[2]

Dardanella, however, is sidestepping the general rule that "where the bodies interred in a cemetery remain therein and the spot awakens sacred memories in living persons, the fact that for some years no new interments have been made and that the graves have been neglected does not operate as an abandonment and authorize the desecration of the graves." 14 Am. Jur.2d *Cemeteries* § 21 (1964). *See Adams v. State,* 95 Ga.App. 295, 97 S.E.2d 711 (1957); *Tracy v. Bittle,* 213 Mo. 302, 112 S.W. 45 (1908); *Andrus v. Remmert,* 139 Tex. 179, 146 S.W.2d 728 (1941); *Roundtree v. Hutchinson,* 57 Wash. 414, 107 P. 345 (1910). Further, "[w]ith graves occupied by bodies the cemetery land was possessed in the way in which it was intended to be possessed and there could be no exclusive possession by an intruder." *Conn v. Boylan,* 224 N.Y.S.2d 823, 834 (1962).

Similarly, in *Phinney v. Gardner,* 121 Me. 44, 115 A. 523 (1921), the court refused to permit a claim of adverse possession based upon using the land for pasture. The court stated that merely using the cemetery as pasture did not rise to the level of open, hostile, notorious, exclusive and adverse occupation. Rather, it amounted to only an occasional trespass by wandering cattle. The court also distinguished cemetery land from other tracts of land and stated that "[t]hey are in a sense consecrated ground, and the law should and must protect them as such." 115 A. at 525. We agree.

We hold that as long as bodies remain interred in cemetery land, that land is possessed in such a way that intruders cannot occupy that land. According to the record before us, bodies remain interred in the property in question. Since Dardanella cannot occupy this property as required for adverse possession, its claim to the property fails.

We reverse the summary judgment.

All the Justices concur.

---

**2.** Dardanella points to SDCL 7–26–6 to buttress its contention that this cemetery is abandoned. That section states: *"For the purposes of* § 7–26–7 the term 'abandoned cemetery' means a cemetery, in which no burial of a human body has taken place for five years and which has not been, for a period of five or more years, maintained by any person, church, religious or benevolent society or any civic organization." (emphasis added). This definition is limited solely to determining when the county board of commissioners may assume maintenance of a cemetery. SDCL 7–26–7. This definition has nothing to do with adverse possession.